## W. M. SMITH v. RUFUS BARRINGER.

If a defendant, (a co-partner,) who is called on for an account, pleads a release, either in full or partial. or matter which in law amounts to a release, or pleads an account stated between the parties, either of all the partnership dealings, or up to a certain date, and these matters are put in issue by a replication, the issues must be found by a jury, before the right to the account can be determined; or if the release or account stated were only partial, before the extent of the account to which the plaintiff is entitled can be determined and the form of decree ascertained.

To exonerate such defendant from accounting prior to a certain date, it is not sufficient therefor, that he should state in his answer, that on that day the plaintiff "called upon him for a dissolution and final settlement of the firm affairs;" and that the plaintiff at the same time signed a receipt, which cannot be construed with any certainty, as purporting to release the prior indebtedness of the defendant; when there is no sufficient averment in such answer of a release, or of accord and satisfaction, or of an account stated and agreed to.

CIVIL ACTION for an account, heard before *Schenck, J.*, at Fall Term, 1875, of the Superior Court of CABARRUS county.

The complaint alleges:

That the plaintiff and the defendant entered into a copartnership for the practice of the law in the county of Cabarrus, and by the terms thereof, the fees arising therefrom were to be equally divided between the plaintiff and the defendant. The partnership commenced on the 4th day of August, 1870, and was dissolved on or about the 12th day of March, 1872.

The defendant has received a considerable sum of money belonging to said partnership, amounting to about seven hundred and fifty dollars.

The plaintiff has frequently demanded of the defendant a settlement, with which demand the defendant wholly refuses to comply.

The defendant, in his answer. alleges :

That the division of profits was to apply only to new busi-

ness, and not to the existing practice of the defendant, then a lawyer in full business, while the plaintiff had just obtained his license, and was almost without clients.

The defendant has no money of said firm, to which the plaintiff is legally or justly entitled; on the contrary, the plaintiff is indebted to the defendant in considerable sums, which the defendant pleads as a bar and counterclaim, as follows :

The main object of the defendant in associating the plaintiff with him in the practice of the law, was to rid himself of a large amount of small, local business, to which the defendant had not time to attend. The defendant was then, as now, living in Charlotte. He had recently lost his professional partner, Judge Osborne, and this prevented him from visiting Concord as often as formerly. To further this object, it was agreed between them that the defendant would give up his old office, near his former residence, in Concord, and the plaintiff was to erect a new one, at his own expense, on a lot of his father's, about the center of the town, and was to devote himself especially to this small local business, with which the defendant was to be troubled no further than was necessary in the way of advising counsel.

The plaintiff wholly failed to erect or secure an office suitable for the purpose of the firm, and the defendant was forced to make or accept such arrangements as offered.

And much to the defendants surprise, after about eighteen months, the plaintiff notified the defendant of his purpose to leave the State and settle in Virginia. This greatly interfered with the defendant's plans, and not only threw upon him a class of business he did not want, but involved him in a vast amount of trouble and responsibility. The plaintiff had undertaken the collection of a large number of small claims for various persons, and had given the receipt of "Barringer & Smith" therefor. He had, in the confusion of his affairs, carried off many of these claims to Virginia; and

others he had stuck away without mark or message in his. father's dwelling. Immediately on his leaving, these receipts were presented to the defendant, and caused him trouble and expense well worth to him $500.

In the meantime, the defendant had found the plaintiff of much service to him in releasing him of the local business referred to, and in looking after certain property belonging to the defendant's clients. On this account, and because the defendant fully expected the plaintiff to continue in the office in Concord, the defendant allowed him not only his own share of the partnership profits, but a fair proportion of the defendant's own fees in Cabarrus. In this way the plaintiff. without any practice of his own to begin with, in about eighteen months realized not less than $850 or $900, including. fees in one of the defendant's individual cases of near $200. The firm had several cases involving gold mines, on which large contingent fees were hoped for.

In this state of their business the plaintiff suddenly, in March 1872, notified the defendant of his purpose to leave: the State, and called upon him for a dissolution and final settlement of the firm affairs. This disclosed the fact, that the plaintiff had in his hands considerably more than his share of the profits, to date. He plead his inability then to pay, and. offered if defendant would endorse his note in bank or loan... him $100, to surrender all claim on the firm, except such sums. as the defendant would be willing to allow him, mainly on the contingent fees referred to.

Memorandum was hastily drawn up to that effect, and. signed by the plaintiff, of which the following is a copy:

"$100.00.

Received of R. Barringer one hundred dollars, money advanced by him to me on the dissolution and settlement of the affairs of Barringer & Smith, and he is to go on, and wind up the affairs of the firm, and pay over to me such

sums as may justly be due me after this date, taking into account the additional trouble he may be at.

W. M. SMITH,

Staunton, Va.

6th of March, '72.''

The defendant preferred to advance the plaintiff, rather than endorse his note in bank.

Immediately after the departure of the plaintiff, the defendant discovered that he had left his business matters and papers in utter confusion, and from his letters in reply to the enquiries of the defendant, the defendant found him wholly incapable of explaining difficulties, if indeed he was not indifferent to all attempts to do so.

Among other things, the defendant discovered that the plaintiff had collected several sums of money which he had not accounted for, and particularly an item of $100, on an individual debt of the defendant, against A. M. Wilhelm, in regard to all which sums the plaintiff made inconsistent and contradictory statements.

Upon the return of the plaintiff to Concord, the defendant agreed, as an act of favor to him, to turn over to him a certain share of the uncollected claims still on hand, and to allow him on a final settlement, one-fourth of fees received by the defendant since the dissolution of the co-partnership, and charge him for the money so unaccounted for by him, unless in the meantime the plaintiff could properly account for said moneys.

In all this time the plaintiff set up no legal claims to any further part of the assets of the *firm*, except such sums as the plaintiff might voluntarily pay him on the contingent cases referred to, and also a half interest in a fee and commissions on a large debt sued on and collected in Rowan, known as the Shaver debt, which was, in fact, not in the firm at all, but in regard to which the defendant was willing voluntarily to act

liberally and allow the plaintiff one-fourth, amounting to one-hundred and twenty-five dollars, if taken in a final and full settlement of all matters and moneys above mentioned.

The defendant afterward found that the plaintiff, in defiance of his written assent to the article of dissolution and settlement, and in total disregard of his verbal arrangement with the defendant, to be satisfied with such claims and moneys, as the defendant voluntarily allowed him after his return to Concord, the plaintiff went on and collected moneys and fees, with which he had no concern, and which pertained entirely to the rights and duties of this defendant, and has never pretended to make any return thereof, not even now, in calling for a partnership account. Among the moneys and fees he collected, were certain funds received from J. M. McCurdy, as the defendant is informed and believes, and probably many others. The plaintiff, himself, wrote to the defendant March 23d, 1873, that he had "arranged his (my) part of the commissions on the Shaver debt, charging him 107, one-half of the debt, and given him receipt for the same." The defendant further found, that the plaintiff had gotten up and circulated a professional card, calculated, and no doubt, intended to deceive the public in reference to his right to act in the affairs of the late firm, in which card he represented himself still of the firm of " Barringer & Smith."

In consequence of all this, the defendant refused to have any further connection with the plaintiff and denied his pretended legal claims. But at the same time submitting to him a memorandum of the shares of fees and commissions, defendant was ready voluntarily to allow him, on his rendering an account of all he had received. The plaintiff has failed to do so, but has gone on and collected fees and funds solely due the defendant.

That said firm was dissolved on the 5th day of March, 1873. The only claims due the plaintiff are the sums the defendant may think fair to allow him, out of the contingent fees and

other cases referred to, and not the subject of judicial ascertainment. That if this should be otherwise, then the defendant insists that the abandonment of his duties by the plaintiff in the way described for about one year, and the consequent extra labor, trouble, expense and responsibility thrown upon the defendant, entitles him to a sum equal to five hundred dollars, which he pleads as a set-off and counter-claim.

As a further counter claim, the defendant pleads the several sums of money collected by the plaintiff and not accounted for by him, together with any other sums that may be so discovered.

The defendant denies that the voluntary arrangement so made with the plaintiff on the dissolution of the firm in 1872, and on his return to Concord in 1873, were accepted or intended by either party as having any legal effect, nor did the plaintiff so pretend until he found it a convenient excuse for his ingratitude and his unfair dealing towards the defendant.

The plaintiff, in his reply, denied each and every counter-claim alleged in the answer, except fifteen dollars collected for the firm, and alleges that he is entitled to judgment for three hundred and seventy-five dollars.

At Fall Term, 1875, on motion of the plaintiff, the case was referred, under the Code, to George B. Everett, Esq., and John S. Henderson, Esq., to decide the questions of law and fact.

From this order, the defendant appealed.

*Shipp & Bailey* and *Montgomery*, for appellant.
*Jones & Jones*, contra.

RODMAN, J. The defendant admits that there was a partnership, which has been dissolved, and that there has been no full release or settlement of the partnership dealings. The plaintiff is, therefore, entitled to an account. The defendant contends, however, that the account should be limited to such

partnership funds as he has received since 6th March, 1872. The practice is clear, that if a defendant, who is called for an account, pleads a release, either in full or partial, or matter which in law amounts to a release, or pleads an account stated between the parties, either of all the partnership dealings, or up to a certain date, and these matters are put in issue by a replication, the issue must be found by a jury, before the right to an account can be determined ; or if the release or account stated were only partial, before the extent of the account to which the plaintiff is entitled can be determined, and the form of the decree ascertained. *D ugla* v. *Cildw-ll*, 64 N. C. Rep., 372; *Price* v. *Eccles*, 73 N. C. Rep., 162; *Morton* v. *Lee*, 73 N. C. Rep., 21.

So that the only question before us is, has the defendant in his answer plead matter which if found to be true, would exonerate him from an account of dealings prior to March 6th 1872. In considering the answer, it is necessary to distinguish what is stated as fact, from what appears to be stated as conclusions of law. The answer states that on March 6th 1872, the plaintiff called on the defendant " for a dissolution and final settlement of the firm affairs. *This* disclosed the fact that Mr. Smith had in his hands considerably more than his share of the profits to date," which he said he was then unable to pay, and offered if defendant would loan him $100 to surrender all claim on the firm, except for such sums as the defendant might be willing to allow, mainly on certain contingent fees. It must be assumed that defendant gave plaintiff the $100, although that is not expressly stated, and the plaintiff then delivered to the defendant the following writing :

" $100.00.

Received of R. Barringer one hundred dollars, money advanced by him to me on the dissolution and settlement of the affairs of Barringer & Smith, and he is to go on and wind up the affairs of the firm and pay over to me such sums as

may be justly due me after this date, taking into account the additional trouble he may be at.

(Signed)                               W. M. SMITH,

                                         Staunton, Va."

March 6th, 1872.

This writing is in ambiguous terms. The defendant is to pay to plaintiff such sums as may be justly due to him after this date. To what do the words, " after this date " apply ? It may be, that payment is thereafter to be made. It is not said " which shall become due hereafter." Taking the writing by itself, it cannot be construed with any certainty as purporting to release the prior indebtedness of the defendant, and the circumstances, attending the execution, do not make it clearer in that direction. The defendant does not positively say that plaintiff agreed to release him. No account was stated which would seem to be the usual, if not the necessary basis of a settlement, nor does defendant say, that nothing was then owing to the plaintiff. It is true, he says, " *this* disclosed," &c.; but " this " refers, grammatically, to plaintiff's call for a dissolution and settlement, and it would be a very uncertain way of stating that a settlement was had, from which it appeared that the plaintiff had received more than his share of the profits. We are of opinion that the answer does not amount to a sufficient averment either of release, accord and satisfaction, or of an account stated and agreed to.

The account must be of all the partnership dealings, as well of those before, as after, March 6th, 1872.

Judgment affirmed, and case remanded. Let this opinion be certified.

PER CURIAM.                                         Judgment affirmed.