In 1871 a voluntary association, known as "Shiloh Association," was formed by several Missionary Baptist churches for colored people. In 1883 the association purchased land for $2,500 and established a school called Shiloh Institute. Said school was chartered, Pr. Laws 1891, ch. 321, the aforesaid association procuring the charter and naming the trustees. The charter was amended, Pr. Laws 1903, ch. 49. In August, 1907, the association was composed of 58 churches. At the annual meeting held at that time, the church of "Blessed Hope" at Henderson was named as the place for the next meeting of the association. But, subsequently, the officers of the association called an extra session to be held at Manson, 27 December, 1907. The churches were notified and 44 of them sent delegates. At that meeting it was decided to withdraw fellowship from "Blessed Hope" Church, and the resolution to hold the next annual session at that church was rescinded, and it was decided to hold it at Ridgeway. The plaintiffs claim that they were duly elected trustees of the school by the representatives of 10 or 12 churches who assembled at "Blessed Hope" in 1908, in accordance with the resolution passed at the regular annual meeting of 1907, and at subsequent meetings, in pursuance of its action, and that the called meeting at Manson in December, 1907, was without authority and void.
The judge below held that there was no provision in the by-laws or constitution of the association for calling the extra session at Manson in December, 1907, and that the proceedings at said meeting were irregular and void, as were all the subsequent meetings held in pursuance thereof, and the election of trustees at such meetings; and that the annual meeting *Page 211 
held at "Blessed Hope" in 1908 was the regular meeting of the association, and that the trustees chosen thereat and at the (268) subsequent meetings held in pursuance of the resolutions adopted thereat are the legally chosen trustees.
The question presented, then, is whether the action of a minority of the churches who met at the regular time and place, or that of the seceding majority held at an irregular time and place is valid. The constitution of the association provides: "Article 11. This constitution may be altered or amended at any regular meeting of the association by a two-thirds vote ofthe members present." There is no provision which required a majority to constitute a quorum, nor which authorized the calling, by certain officers, of the meeting at Manson in December, 1907. The association is not incorporated, and the constitution, which is the contract between the parties, contemplates that a majority of the members present at any regular meeting should be the association.
A corporation has only such powers as are conferred by the charter creating or the laws regulating it, and a voluntary association has no existence or power except as contained in its formal articles of agreement or established by custom, acquiesced in by the parties to it. When the association consists, as here, of the annual meeting of delegates from its constituent members — the churches — to further certain common interests, the organization is dissolved, upon adjournment, into its individual elements until reassembled pursuant to the common agreement.
"In church organizations, those who adhere and submit to the regular order of the church, local and general, though a minority, are the true congregation." Roshi's Appeal, 69 Pa., 462; 8 Am. Rep., 280; Gable v.Miller, 10 Paige, 627. This was recently held by the House of Lords in England as to the State Church of Scotland (L. R. App. Cases, 1904), where a very small per cent of the "regulars" were adjudged entitled to hold the entire property of the organization. The courts will not decide such controversies beyond ascertaining which is the "regular" organization.
We concur, therefore, with his Honor, that the regular meeting held in 1908 at "Blessed Hope" in pursuance of the resolution adopted at the regular annual meeting in 1907 constituted the legal (269) association, though the representatives of only a minority of the original 58 churches attended, and that the action of the seceding majority held at Manson in December, 1907, had no legal force or effect. There has been a regular succession of meetings and the election of trustees of Shiloh Institute thereat in pursuance of the action taken at "Blessed Hope," the regular meeting, in 1908, and his Honor properly held that the plaintiffs, being such trustees, are entitled to administer the school known as Shiloh Institute. *Page 212 
This action was originally instituted by the State on relation of the solicitor, under Revisal, 3922-4. The amendment to the charter in 1903 provided that the trustees of Shiloh Institute should be elected by Shiloh Baptist Association, two at each annual meeting of the association. The defendants in the action were the trustees elected at the Manson meeting and at the other meetings held in pursuance thereof. It appearing that the real parties in interest were the trustees which had been elected at the regular meeting held at "Blessed Hope" in 1908, and at the successive meetings held in pursuance thereof, his Honor properly granted their application to be made parties plaintiff, so that the whole matter might be decided upon its merits, and refused to dismiss the action. It could have been no advantage to either plaintiffs or defendants to have dismissed the action that was then pending, which was brought to decide who were entitled to administer the trust, and the court in its discretion admitted the real parties in interest to be joined. Revisal, 507.
No appeal lay from the refusal to dismiss (Johnson v. Reformers,135 N.C. 385), and the entry of appeal, though not perfected, will be treated as an exception on this appeal, though not perfected, will be treated as an exception on this appeal from the final judgment. Bernardv. Shemwell, 139 N.C. 446.
The defendants were already in court, the subject of the controversy was not changed by the amendment, and the additional parties, being the beneficiaries for whom the action was brought, were properly made parties. Revisal, 400. Even if it be conceded that the solicitor was an unnecessary party, this is not ground for exception.
(270) The object of The Code system is to decide cases upon the merits. Here the cause of action from the beginning was to determine which set of trustees should administer Shiloh Institute. The defendants were regularly made parties and had full opportunity to present their side of the question. If there was a defect of parties plaintiff originally, it was cured by the amendment which allowed the beneficiaries of the action, the other set of trustees, to be made parties plaintiff.
This case differs from Simmons v. Allison, 118 N.C. 774, where the congregation was permitted to vote as to its choice. There the congregation was the constituent body. Here, by the constitution, the contract of the association, a "majority of the members present" at a regular meeting was the organic body and had the right to elect the trustees.
No error.
Cited: Church v. Trustees, 158 N.C. 121; Griffin v. Cupp, 167 N.C. 96;Gold v. Cozart, 173 N.C. 614. *Page 213