IONIC LODGE #72 F. & A. A. M. v. IONIC LODGE FREE ANCIENT & ACCEPTED MASONS #72 COMPANY, W. S. SCALES, AND GEORGE W. HARRIS.

(Filed 9 June, 1950.)

**1. Associations § 5—**

Since an unincorporated fraternal association is given power to acquire and hold property in its common name, G.S. 39-24, G.S. 39-25, and may be served with summons and sued in the manner provided by G.S. 1-97 (6), it *is held* that such association has capacity to sue in its common name.

**2. Corporations § 45—**

A corporation which has had its charter suspended by the Secretary of State on certificate of the Commissioner of Revenue that it had not reported or paid its tax, Sec. 801, Revenue Act of 1937, is deprived of the power of engaging in its ordinary business, but is not deprived of the capacity to be sued and defend suits against it.

**3. Pleadings § 22b—**

While motion to amend the complaint is addressed to the discretion of the trial court, when the court erroneously dismisses the action on the ground that plaintiff has no capacity to sue, and thereupon denies plaintiff's motion to be allowed to amend, the order denying the motion to amend will be stricken out on appeal without prejudice to plaintiff to renew its motion in order that it may be properly considered in the discretionary power of the court.

**4. Judgments §§ 10, 30—**

Where the clerk enters a default judgment declaring plaintiff to be the owner of an undivided interest in lands in accordance with the facts alleged in the complaint, but does not appoint a receiver or make provision for an accounting as prayed for, the judgment is conclusive as to title, but the suit remains pending in the Superior Court for such further relief to which plaintiff may be entitled consequent upon the adjudication of title. G.S. 1-211.

PLAINTIFF's appeal from *Clement, J.,* April, 1950, FORSYTH Superior Court.

The plaintiff, an unincorporated Masonic fraternal order, society or association, brought this action *sub nomine* "Ionic Lodge No. 72, F. & A. A. M.," against "Ionic Lodge #72 Free Ancient & Accepted Masons Company," alleged to be a corporation, and the individual defendants W. S. Scales and Geo. W. Harris. Summons against the Corporate defendant was returned: "Company process officer or its agent cannot be found in Forsyth County," and on March 12, 1949, service of summons and complaint was made on Secretary of State Thad Eure. The individual defendants were duly served.

The complaint alleges that the defendant corporation was organized to serve as trustee for the plaintiff lodge to hold the title to one-fourth undivided interest in certain property described in the complaint for the use and benefit of plaintiff, and to that end the defendant was created a non-stock corporation. That in pursuance of this purpose the defendant company acquired a record title to the described property, and at the request of plaintiff lodge issued non-negotiable certificates of stock in said company to various members of plaintiff lodge, it being understood and agreed that they were to be held for its benefit, and that they should be surrendered, and that the member-holders did not thereby acquire any interest in the property so held for its benefit, or any claim of ownership against the lodge or the corporation, the certificates to be and remain merely *indicia* of membership in the lodge, "it being the intent of the lodge, the defendant company, and all members in both organizations that the beneficial ownership of the property described should at all times be held for the use of the plaintiff lodge."

It is alleged that the charter of the defendant corporation was thereafter suspended, (the further record and pleadings disclose that this action was taken by the Secretary of State under authority of Section 801 of the Revenue Act of 1937); and it is contended that thereupon title did "reinvest in plaintiff."

It is further alleged that defendants Scales and Harris knew the above facts and were bound by them, but that they have connived to obtain title to the property, and have collected rents from rental of the premises for a long series of years, amounting to upwards of $20,000, one-fourth of which, it is alleged, should be accounted for to plaintiff as owner of one-fourth interest in the building. The building itself, it is alleged, is worth approximately $25,000.

The plaintiff prays for recovery of $5,000 rents of the building; restraint of individual defendants from interfering with the title; that they be required to account; that a receiver be appointed, etc.

Summons and complaint having been served in the manner stated, and complaint having been duly filed, and the defendants not having answered, the plaintiff applied to the Clerk of the Superior Court for judgment by default, G.S. 1-211.

The motion was allowed, and, on April 19, 1949, the Clerk rendered and entered judgment, which after formal recitals of notice and failure to answer, is as follows:

> "Now, therefore, it is ordered, adjudged and decreed that the defendant company was and has been, up to the signing of this judgment the holder of a one-fourth undivided interest for the benefit and use of the plaintiff, in property described as follows:

" 'In the city of Winston-Salem, N. C. Beginning at the corner of Lot #12 and running southwardly on the west side of Chestnut Street 44 feet and 3 inches to 7th Street; thence westwardly with 7th Street 100 feet to an alley; thence northwardly with said alley 39 feet and 11 inches to the line of Lot #12; thence eastwardly with the line of Lot #12, 100 feet more c. less to the beginning, said lot being known as Lot #13 on the Show Ground Platt, recorded in the Register's Office, Forsyth County, N. C., in Book of Deeds 42, page 274, being the same prope:ty as conveyed to the Balti.aore Building & Loan Association of Baltimore City by J. S. Grogan, Trustee, by deed dated 20 day of March, 1894, and recorded in Office of Register of Deeds for Forsyth County, N. C., in Book of Deeds 47, page 177.'

"said description being set forth in paragraph three of the complaint in this cause.

"And it is further ordered and adjudged that the full and complete beneficial ownership of said tract or such portion as was held of record by the defendant company be vested in the plaintiff, free from all claims of the defendant company, its heirs, successors and/or assigns."

On the following April 28, 1949, Geo. W. Harris filed with the Clerk an answer to the original complaint in which he denied the principal allegations thereof.

Summons was issued to Robert L. Scales, Executor of W. S. Scales, (who died after service of notice and while the action was pending). The executor answering, denied the substantial portion of the complaint; and set up for a "further defense and plea in bar" the plea that the defendant corporation or company was "incorporated under the laws of the State of North Carolina, but its franchise and power to function as a legal entity were forfeited and terminated on the 1st day of May, 1939, and that it has now no legal existence;" and asks that the case be dismissed as to him. This answer was filed August 2, 1949.

On November 17, 1949, the defendants Harris and Scales, Exr., filed a written motion seeking to set aside the judgment on the ground that on May 1, 1939, the "corporate functions" of the defendant "Ionic Lodge, F. & A. A. Masonic #72 Company" had been suspended by order of the Secretary of State, and allege that, as a legal consequence they are, as stockholders vested with title to the one-fourth undivided interest in the property described and are entitled to the rents therefrom.

This motion was denied by the Clerk of the Court on the 15th day of March, 1950, and movents appealed to the Superior Court.

On April 19, 1950, plaintiff filed a motion to amend the complaint by withdrawing paragraph one and substituting therefor an allegation that J. G. Giles, Willie McCarnel, and Frank Dixon are the duly elected trustees of plaintiff, and revising "the style of the cause" to read correspondingly.

On April 20, 1950, at the hearing the defendants supplemented their formal motion to dismiss the action by demurrer *ore tenus* to the complaint on the ground "that it appears upon the face thereof that the plaintiff has no legal capacity to sue."

The various appeals, demurrer and motions were heard before *Clement, J.,* who, setting up in the premises thereto the matters to which the judgment applies, rendered judgment as follows:

> "Now, therefore, the motion of plaintiff to amend the complaint is denied, and the demurrer to the complaint by the defendants Robert L. Scales, executor of the will of W. S. Scales, and George W. Harris, and their motion to dismiss the action are hereby allowed, and it is accordingly ordered, adjudged and decreed that the judgment signed and entered by the Clerk herein on the 19th day of April, 1949, is void and of no legal effect and is hereby set aside, and the Clerk is directed and ordered to mark void or strike the judgment from the record and to certify this judgment and order to the Register of Deeds of Forsyth County, who shall duly record it and make a marginal reference thereto on the record of the Clerk's judgment, which the plaintiff procured to be recorded in the Register's office in Book 537 of Deeds of Trust, at page 64."

To this judgment the plaintiff excepted and appealed, assigning as errors: (1) Dismissing plaintiff's action; (2) declaring void plaintiff's judgment by default before the Clerk; (3) denying plaintiff's motion to amend the complaint. Other assignments of error are formal.

*Elledge & Browder and Eugene H. Phillips for plaintiff, appellant.*
*Ingle, Rucker & Ingle for defendants, appellees.*

SEAWELL, J.   The grounds on which Judge Clement acted in reversing the Clerk of the Superior Court were sufficiently made clear in the premises to his judgment and those grounds were: (a) That the unincorporated fraternal society has no capacity to sue or be sued, and having no standing in a court of law and equity, the judgment rendered in its behalf was null and void; and (b) that the defendant corporation with the remarkable appellation, "Ionic Lodge Free Ancient & Accepted Masons

#72 Company," having had its charter suspended by the Secretary of State for nonpayment of revenue tax was thereby deprived of its power to "function," was, during the suspension, in no better position than a dissolved corporation,—barred from all activities, particularly the capacity to sue or defend in the courts.

Of these in order.

1. *Of the capacity of the plaintiff to sue in its common name, the demurrer ore tenus to. the complaint and the motion to dismiss the action.* The appellant contends that the demurrer to the complaint and motion to dismiss based on the incapacity of the plaintiff to sue in the manner attempted came too late after a year of quiescence. We may dispose of the critical analyses and niceties of distinction which occupy many pages of the briefs by supposing the objections to have been timely made and considering them on their merits. *Ball-Thrash v. McCormick,* 162 N.C. 471, 78 S.E. 303; *Brewer v. Abernathy,* 159 N.C. 285, 74 S.E. 1025; *Tucker v. Eatough,* 186 N.C. 505, 120 S.E. 57. If the plaintiff had the legal capacity to sue with respect to its property and the incident property rights, both the motion and the demurrer grounded on the contrary theory are ineffective.

Following the strict rule of the common law our courts have uniformly held that unless given that capacity by some pertinent statute, an unincorporated association has not the capacity to sue. *Tucker v. Eatough, supra; Kerr v. Hicks,* 154 N.C. 266, 268, 70 S.E. 468.

*Tucker v. Eatough* cites *United Mine Workers of America v. Coronado Coal Co.,* 259 U.S. 344, 66 L. Ed. 965, and quotes:

"Undoubtedly at common law an unincorporated association of persons was not recognized as having any other character than a partnership in whatever was done, and it could only sue or be sued in the names of its members, and their liability had to be enforced against each member."

The appellants contend, and we think correctly so, that the plaintiff comes within the pale of recently enacted statutes vesting them with that capacity.

Chapter 133 of the Public Laws of 1939, incorporated in the General Statutes as Sec. 39-24 to Sec. 39-27, inclusive, relates to voluntary organizations and associations. G.S. 39-24 provides as follows:

"Voluntary organizations and associations of individuals organized for charitable, fraternal, religious, or patriotic purposes, when organized for the purposes which are not prohibited by law, are hereby

authorized and empowered to acquire real estate and to hold the same in their common or corporate names."

Sec. 39-25 authorizes conveyance in the common name.

It is strongly persuasive that having been given the power to acquire, hold and convey property under its common name there must go with it the capacity to sue and be sued in respect to it.

*In arguendo* the capacity of the plaintiff to sue in *United Mine Workers v. Coronado Coal Co., supra,* was based largely on this principle; and the case of *Taff-Vale R. Co. v. Amalgamated Soc. of Railway Servants,* A. C. 426, 1 B. R. C. 832, quoted in the *Coronado Case,* was decided altogether on that principle. The *Coronado Case* quotes from the *Taff-Vale Case* as follows:

> "*Mr. Justice Farwell,* meeting the objection that the union was not a corporation and could not be sued as an artificial person, said: 'If the contention of the defendant society were well founded, the legislature has authorized the creation of numerous bodies of men capable of owning great wealth and of action by agents, with absolutely no responsibility for the wrongs that they may do to other persons by the use of that wealth and the employment of those agents.'
>
> "He therefore gave judgment against the union. This was affirmed by the House of Lords. The legislation in question in that case did not create trade-unions but simply recognized their existence and regulated them in certain ways, but neither conferred on them general power to sue, nor imposed liability to be sued."

Furthermore, in 1943 the General Assembly, by enacting Chapter 478, amended G.S. 1-97 by adding to it paragraph 6 as follows:

> "Any unincorporated association or organization, whether resident or nonresident, desiring to do business in this state by performing any of the acts for which it was formed, shall, before any such acts are performed, appoint an agent in this state upon whom all processes and precepts may be served, and certify to the clerk of the superior court of each county in which said association or organization desires to perform any of the acts for which it was organized the name and address of such process agent. If said unincorporated association or organization shall fail to appoint the process agent pursuant to this subsection, all precepts and processes may be served upon the secretary of state of North Carolina. Upon such service, the secretary of state shall forward a copy of the process or precept

to the last known address of such unincorporated association or organization. Service upon the process agent appointed pursuant to this subsection or upon the secretary of state, if no process agent is appointed, shall be legal and binding on said association or organization, and any judgment recovered in any action commenced by service of process, as provided in this subsection, shall be valid and may be collected out of any real or personal property belonging to the association or organization."

It is contended by the appellees that this subsection still refers to "unincorporated fraternal beneficial organizations, fraternal benefit order, association and/or society issuing certificates or policies," etc., mentioned in Sec. 4. There is no internal reference to section 4 or sec. 6, and no similarity of content; and there is no reason why it should be so categorized and plenty of reason why it should not. Not only is G.S. 1-97 directed to the method of service covering a number of cases not connected with paragraph 4, but the provisions of paragraph 6 are as general with reference to "unincorporated associations" as could well be devised.

Subsection 4 provides for service on a beneficial association issuing certificates or policies of insurance "as is now or hereafter provided for service of process on corporations: Provided, this paragraph shall only apply in actions concerning such certificates and/or policies of insurance." The further provision for service on associations, as applied to those mentioned in paragraph 4, would be not only supererogatory but contradictory. We think the plaintiff comes within the pale of subsection 6.

The statute does not in direct language confer upon an association like the plaintiff the capacity to sue and be sued in its common name; but its intent and effect cannot be mistaken. In a similar situation in *Ex parte Hill*, 165 Ala. 365, 51 So. 786, the Supreme Court of Alabama observed:

"To provide for the service of process implies the power to issue such process; and the power to issue or serve judicial process implies an action or suit pending or to be commenced by such process. The power to serve judicial process upon an individual, association, or corporation implies necessarily that such individual, corporation, or association is suable or subject to the process of the court for which such process issues."

And it can hardly be questioned that if the association might be sued in its common name by service upon the process agent or the secretary of state, it follows as a corollary conclusion that it has also the capacity to sue. We so hold.

It follows that the motion to dismiss plaintiff's action and the demurrer thereto should have been declined and overruled.

2. *Of the corporate defendant's capacity to be sued and to defend.* The picture of the corporation whose charter has been suspended by the Secretary of State under Section 801 of the Revenue Act of 1937, on certificate of the Commissioner of Revenue that it has not reported or paid its tax, as drawn by the appellees, is harsher than the statute contemplates. It is permitted to breathe a little and survive the period of suspension so that it may have power to conduct its ordinary business activities if the Commissioner subsequently reports to the Secretary of State, and the suspension is automatically ended. The law has not given to either of these State agencies the power to dissolve or extinguish the corporation or write upon their files a *hic jacet.* There are many ways in which the corporation may be dissolved. Amongst them: voluntary surrender of its charter, expiration of the period of existence named in the charter, by court action for adequate cause, and others; but not under the statute cited. The statutes usually provide that a corporation dissolved in this manner will have time to wind up its affairs, and provide for the manner in which this may be done.

For reasons *a fortiori* and by a fair interpretation of the statute, while depriving the corporation of the power to engage in the ordinary business for which it has been chartered, it has not taken away from it the incidental powers necessary to its survival; the power to protect its property in a court of law, either by assertion or defense of right. These are convenient, of course, for the performance of the general activities which the statute bars, but they are exigent when no other means is provided to protect the property and property rights belonging to the corporation and to its stockholders to whom the corporation stands in trust relation.

Who shall defend it? Is the suspended corporation an acceptable party in the forum where its rights are finally determined,—*persona standi in judicio?* It would be an amazing paradox indeed if the fact that the corporation failed to pay its debt to the state should operate to absolve it from its obligations to others.

This is not an open question here. In *Trust Co. v. School for Boys,* 229 N.C. 738, 743, 51 S.E. 2d 183, the question was directly raised and the decision was contrary to the present contention of the appellees. We see no necessity of extending the discussion beyond what was said there.

3. *Of the plaintiff's motion to amend the complaint.* There remains for consideration the denial of plaintiff's motion to amend the complaint. Ordinarily the motion might have been within the discretion of the court—the basis on which His Honor purported to deny it. But it is evident that he ignored the conditions under which that discretion might

have been exercised, in attempting to dismiss the action; in that view the phrase "in the discretion of the court" merely presents a term and not a reality. The court cannot achieve double security for its order in this way.

The suit is still pending. The judgment in controversy went only as far as the clerk conceived his jurisdiction to extend; he did not appoint a receiver; he did not make provision for accounting; he did not attempt to exercise equitable powers of any sort. These things were left to the Superior Court where further proceedings are within its orderly jurisdiction. The judgment is by default final as to the title of the property; and the rights of the plaintiff consequent upon this adjudication are still open to pursuit.

Since the statute G.S. 39-24 provides that fraternal organizations may acquire and hold property "in their common or corporate names" and to convey it in the "common name," G.S. 39-25, as we have said, we see no reason why the plaintiff may not sue or defend *in eodem nominee;* and we understand this to be the intent of the law, G.S. 1-97 (6). At any rate we are of the opinion that the order of His Honor was improvidently made and it is therefore stricken out without prejudice to the plaintiff to renew its motion in the court below.

For these reasons the judgment under review is reversed and the cause is remanded to the Superior Court of Forsyth County for judgment in accordance with this opinion; and such further proceedings as may be proper.

Reversed and remanded.