SOLON LODGE No. 9 KNIGHTS OF PYTHIAS COMPANY, TWIN-CITY LODGE No. 5 KNIGHTS OF PYTHIAS COMPANY, AND MASEO KNIGHTS OF PYTHIAS LODGE No. 14 COMPANY v. IONIC LODGE FREE ANCIENT AND ACCEPTED MASONS No. 72 COMPANY.

(Filed 11 January, 1957.)

1. **Associations § 4—**

Where all the members of an association concur in transferring the property to a corporation created by the association for the purpose of taking title, and have the corporation issue stock to the association and its individual members, *held*, the corporation acquires the legal title and the interest of the members of the association in the property is sufficient consideration for the issuance of the stock to them by the corporation.

2. **Reference § 3—**

In an action to establish a trust in real property of a value in excess of $500, the court may of its own motion order a compulsory reference. G.S. 1-189(5).

3. **Reference § 14b—**

Where a party objecting to a compulsory reference complies with all procedural requirements for a jury trial upon exceptions to the referee's report, it is error for the court to deny the demand for jury trial and to proceed to consider the evidence and to pass upon the exceptions.

4. **Reference § 4—**

The rule that a plea in bar which extends to the whole cause of action so as to defeat it entirely precludes a compulsory reference until the plea in bar is first determined, applies only when there are two distinct controversies, one as to the right to recover and the other as to the amount of recovery in the event the right to recover is established, as for an accounting. But where the cause of action is entire and indivisible so that the party asserting the right is entitled to recover entirely or not at all, pleas in bar of statutes of limitation, laches and estoppel will not preclude compulsory reference.

5. **Reference § 14e—**

Trial by jury upon exceptions to the referee's report is only upon the written evidence taken before the referee, and the referee's findings of fact and conclusions of law are not competent evidence before the jury.

6. **Estoppel § 11b—**

A party pleading estoppel by way of an affirmative defense has the burden of proof upon the issue.

7. **Limitation of Actions § 9—**

The statute of limitation begins to run against an action to establish a trust as of the date it is shown the trust was in some manner repudiated.

8. **Equity § 3—**

The court may not dismiss an action on the ground of laches except upon facts disclosed by the evidence of the complaining party or the verdict of a jury.

**9. Reference § 14e—**

Upon appeal from the referee's report in a compulsory reference where right to jury trial has been preserved, the court cannot determine as a matter of law, prior to the introduction of evidence, the defenses of pleaded statutes of limitation, laches and estoppel, since only after the introduction of evidence can the court ascertain if plaintiff's own evidence establishes these defenses or if defendant's evidence entitles him to a peremptory instruction thereon.

JOHNSON, J., not sitting.

CROSS APPEALS by Respondent and Intervenors from *Phillips, J.*, 19 March, 1956, Term, of FORSYTH.

When instituted 21 August, 1952, this was a special proceeding for a partition sale of the realty described below. The controversy herein, engrafted on said proceeding, is between the intervenors and the respondent; and when their pleadings were filed the subject of the controversy was the ownership of an undivided one-fourth interest in the realty.

The realty has been sold by a commissioner. Each of the three petitioners has received its one-fourth of the proceeds, and has no further interest. The remaining one-fourth, $2,902.06, now held by the Clerk for disposition in accordance with final judgment herein, is now the subject of the controversy.

In respect of said controversy, the intervenors' status is that of plaintiffs. They are named officers and members of Ionic Lodge No. 72 Free, Ancient and Accepted Masons, an unincorporated fraternal organization, hereinafter called the Lodge; and they intervene and plead in behalf of the Lodge and all members thereof. The status of respondent, hereinafter called the Corporation, in respect of said controversy, is that of defendant. By the terms of its original charter, issued in 1901 by the Secretary of State, it was a non-stock corporation, the stated object being "to mutually aid and provide for its members during sickness, and perform charitable acts . . ." In addition to general powers with reference to the purchase, mortgage and conveyance of real and personal property, it was expressly provided that it was "authorized to hold real and personal property to the amount of Twelve Thousand and No/100 Dollars ($12,000.00) for charitable purposes only."

The record title to the undivided one-fourth interest in controversy was in the name of the Corporation.

The intervenors, upon facts stated in detail, alleged that the legal title, if any, of the Corporation, was held by it in trust for the Lodge and its members, they being the equitable owners thereof; and their intervention was to establish such trust. The respondent, answering, *denied* the intervenors' allegations; and, predicated upon facts alleged

to have occurred in 1929 and thereafter, pleaded in bar of intervenors' right to establish such trust, (1) the three-year and ten-year statutes of limitations, (2) laches, and (3) estoppel.

On 3 September, 1954, an order was signed by Phillips, J., wherein "the Court of its own motion and in its discretion" appointed Oscar O. Efird, Esq., as referee, to hear the evidence and report his findings of fact and conclusions of law. The intervenors objected and excepted to this order of compulsory reference and renewed their objections, exceptions and demand for jury trial before proceeding with evidence before the referee.

On 2 November, 1955, the referee made his report. Apparently, the evidence offered by the respective parties was voluminous; for the referee, in support of his findings of fact, cites *inter alia* "R 190." But the only portion of the evidence included in the record on appeal consists of the testimony of two witnesses and of certain exhibits, a total of some fourteen pages. Hence, the referee's report (findings of fact) is the principal source of our information as to the facts.

There appears to be little, if any, controversy as to these facts: In 1895 a group of individuals organized the Lodge under a charter therefor from the State Grand Lodge of the Masonic Order. In 1901 the Lodge, together with three other fraternal lodges, purchased the realty, then a vacant lot. The Lodge directed the seller to convey the undivided one-fourth interest purchased by it to the Corporation, which was chartered at the instance of the Lodge so that it could borrow money and secure payment by an acceptable mortgage. The owners constructed a three-story building on said lot. The four fraternal lodges used the second and third floors for their meetings. In addition to said lodge facilities, there were storerooms (on the first floor) and offices. These, and occasionally the lodge rooms, were rented to outsiders. Each of the four lodges elected representatives to serve on a joint board of trustees; and these trustees managed the building, rented the storerooms and offices, collected the rents, and applied the proceeds to the maintenance, upkeep and expenses of the building, and the liquidation of the indebtedness against it.

Upon his findings of fact, including those stated above, the referee concluded, as a matter of law, that prior to 1928 the Corporation held legal title to said one-fourth interest in the realty as trustee for the Lodge. The respondent did not except to the findings of fact or conclusions of law made by the referee. The apparent reason is that the further findings of fact and conclusions of law, relating to respondent's said pleas in bar, were favorable to respondent and constituted the real basis of respondent's position.

The referee's further findings of fact included the following: In 1928, interest was at a low ebb; and the then members became fearful

that the Lodge might become inactive and its charter suspended so that, by reason of the provisions of the State Masonic Code, its property would vest in the State Grand Lodge. To forestall such contingency, the then members, on 13 January, 1928, "voted to cut up the hall into shares, divide it up, issue shares to the members and give the brethren something they could have for the future." Accordingly, the Corporation, without amending the charter, issued shares of stock to each member of the Lodge in good standing and issued seven shares to the Lodge. And at said meeting of 13 January, 1928, the then members of the Lodge voted to have two treasurers, one to hold its regular funds and the other to hold the rents from said realty; and it was provided that "there be declared a semi-annual apportionment of funds accruing on the stock at the option of the certificate holding members only . . ." On 22 May, 1929, when it came to the attention of the brethren that the Corporation's charter provided that it was a non-stock corporation, the said charter was amended so as to provide: "That the authorized capital stock of this corporation is $5,325.00 divided into 106½ shares of the par value of $50.00 per share. Said shares of capital stock to be issued to members of Ionic Lodge Free, Ancient and Accepted Masons No. 72 Company only." Thereupon, new certificates of stock were issued and delivered in exchange for those first issued. The first issue was on 13 February, 1928. The second issue was on 24 May, 1929.

And, according to the referee's findings of fact, thereafter the Corporation managed the property; collected rents from the tenants; borrowed money for repairs and improvements on the building and executed deeds of trust as security; paid dividends on the stock to the holders of said certificates; and the Lodge paid rent to the Corporation from 1928 to 1947 for the use of the lodge facilities. Apparently, the ownership of said one-fourth undivided interest has been the subject of controversy since 1947.

The referee concluded that, upon his findings of fact, the Lodge was estopped to deny the validity of said transactions of 1928-1929; that the intervenors' cause of action, if any, is barred by (1) the pleaded statutes of limitation, (2) laches, and (3) estoppel; and that the members of the Lodge who became such after the transactions of 1928-1929 had no cause of action.

The intervenors, in apt time, excepted to each of the adverse findings of fact and conclusions of law made by the referee, and tendered appropriate issues of fact raised by the pleadings and by their exceptions to the findings of fact and demanded a jury trial on each issue so tendered.

When the cause came before Phillips, J., the court denied intervenors' said demand for a jury trial and proceeded to consider the evidence and pass upon each of the intervenors' said exceptions.

The court, while otherwise confirming and adopting all findings of fact made by the referee and overruling intervenors' exceptions thereto, made two additional findings of fact, viz.: The court found as a fact that the action taken by the Lodge on 13 January, 1928, was "by a vote of 13 for and 12 against, out of a total membership of approximately 60 members." The court further found as a fact: "That when the certificates of stock in the Respondent corporation were issued in 1928 and 1929 and distributed to the then members of the Ionic Lodge No. 72, Free, Ancient and Accepted Masons, the said members who received such certificates of stock paid no consideration and incurred no liability therefor, and that the entire transaction was without any consideration."

The court agreed with the referee in holding that in 1928 and prior thereto the Corporation held the legal title in trust for the Lodge and its members; but the court concluded that the facts found by the referee, as supplemented, were insufficient to establish respondent's said pleas in bar.

Accordingly, the court entered judgment in favor of intervenors, adjudging that the said $2,902.06 be paid to the Lodge for use "toward providing a lodge hall for the purposes of the Lodge."

Both respondent and intervenors excepted to the judgment and appealed therefrom.

The respondent brings forward two assignments of error, (1) to the signing and entry of the judgment, and (2) to the additional finding by the court (set out above) to the effect that the issuance of certificates to the then members was without consideration.

The judgment being in their favor, the appeal of the intervenors is conditional, that is, for consideration only in the event this Court, upon the findings of fact, should be of opinion that respondent should prevail. For consideration in such event, the intervenors perfect their appeal, bring forward their objections and exceptions to the reference and to the court's denial of their demand for a jury trial on the issues raised by the pleadings and by their exceptions to the referee's findings of fact.

*William S. Mitchell for intervenors, appellants and appellees.*
*Ingle, Rucker & Ingle for respondent, appellant and appellee.*

BOBBITT, J. A prior action, commenced 12 March, 1949, was instituted *sub nomine* Ionic Lodge #72 F. & A. A. M. against the respondent herein and others. It involved the identical realty and essentially the same controversy. *Ionic Lodge v. Masons,* 232 N.C. 252, 59 S.E. 2d 829; *S.c.* on rehearing, 232 N.C. 648, 62 S.E. 2d 73. The final decision affirmed dismissal of the action on the ground that under the statutory

provisions then in force the plaintiff lacked legal capacity to sue in its common or collective name. Prior to the enactment of the statute (1955) now codified as G.S. 1-69.1, to wit, on 26 November, 1952, the intervenors were made parties to this proceeding and thereupon pleaded in behalf of the Lodge and its members.

In considering *respondent's appeal,* we must assume the facts to be as found by the referee and by the court; and, upon these facts, *Lodge v. Benevolent Asso.,* 231 N.C. 522, 58 S.E. 2d 109, would control decision here. The facts in the cited case resemble closely the facts under consideration. The applicable principles of law are clearly and fully stated therein by *Ervin, J.*

Suffice to say: If *all* of the members of the Lodge at the time of the transactions of 1928-1929, and the Lodge itself in respect of said seven shares, accepted certificates of stock issued by the Corporation in exchange for their interest in the realty, and continuously thereafter until 1947 recognized the Corporation's ownership of the realty as set forth in the referee's findings of fact, the intervenors cannot prevail. The interest of the members of the Lodge in the property at the time of the transactions of 1928-1929 was a sufficient consideration for the issuance to them by the Corporation of said certificates of stock. The "finding of fact" made by the court, quoted above, to the effect that these transactions were without consideration, must be regarded an erroneous conclusion of law.

As to the intervenors' contention that the property owned by the Corporation was for use, under its charter, for charitable purposes only, suffice to say that the only question presented herein is *their* alleged ownership of it.

Since our decision on intervenors' appeal reopens the case as to the issues of fact, we refrain from further discussion as to the law applicable to the facts found by the referee and by the court.

We consider now the appeal of the intervenors. They seek to enforce equitable rights, that is, to establish a trust in real property. In such action, when "the matter or amount in dispute is not less than the sum or value of five hundred dollars," the court, of its own motion, may order a compulsory reference. G.S. 1-189(5); *Reynolds v. Morton,* 205 N.C. 491, 171 S.E. 781. But, in the absence of waiver, the parties to such action are entitled to a jury trial on the issues of fact raised by the pleadings. *Erickson v. Starling,* 235 N.C. 643, 654, 71 S.E. 2d 384, and cases cited.

The intervenors have complied carefully with all procedural requirements to preserve their right to a jury trial. *Bartlett v. Hopkins,* 235 N.C. 165, 69 S.E. 2d 236; *Brown v. Clement Co.,* 217 N.C. 47, 6 S.E. 2d 842; *Booker v. Highlands,* 198 N.C. 282, 151 S.E. 635. Indeed, a stipulation to that effect appears in the record.

The intervenors insist that, when the respondent interposed its said pleas in bar, they were entitled to a jury trial on the issues raised thereby before the court had authority to order a compulsory reference; and that, since the order of reference was erroneously made, the proceedings before the referee should be set aside and the cause remanded for trial *de novo* before a jury on the issues raised by respondent's said pleas in bar. If the position is otherwise sound, *Ward v. Sewell,* 214 N.C. 279, 199 S.E. 28, is authority for intervenors' right to invoke the rule of law upon which the position is based.

This Court has held repeatedly that "a plea in bar which extends to the whole cause of action so as to defeat it absolutely and entirely will repel a motion for a compulsory reference and no order of reference should be entered until the issues of fact raised by the plea is first determined." *Brown v. Clement Co., supra,* and cases cited. And, estoppel, laches, and statutes of limitation have been held to constitute such pleas in bar. *Grady v. Parker,* 230 N.C. 166, 52 S.E. 2d 273; *Graves v. Pritchett,* 207 N.C. 518, 177 S.E. 641; *Garland v. Arrowood,* 172 N.C. 591, 90 S.E. 766; *Bank v. Evans,* 191 N.C. 535, 132 S.E. 563; *Oldham v. Rieger,* 145 N.C. 254, 58 S.E. 1091; *Duckworth v. Duckworth,* 144 N.C. 620, 57 S.E. 396.

Even so, it seems appropriate, in respect of a case such as this, to consider the reason underlying the stated rule and the limits of its application; and in doing so we advert to the fact that the rule rests upon court decisions, not upon statute.

*In limine,* attention is called to the fact that the sole purpose of the intervenors' action was to establish a trust in real property; presently, it is to recover said fund of $2,902.06. It is not alleged that they are entitled to an accounting, for rents collected by the Corporation or otherwise.

The rule under consideration had its origin in actions on an account or for an accounting. This Court held that a plea in bar, *e.g.,* a plea of full settlement, should be disposed of before an order of compulsory reference was made. The obvious reason was that, if the plea was established, only delay, expense and futility would result from an inquiry to determine *the exact amount* otherwise due by defendant to plaintiff.

The rule was adopted prior to the enactment of The Code. *Royster v. Wright,* 118 N.C. 152, 24 S.E. 746; *Dozier v. Sprouse,* 54 N.C. 152; *Douglas v. Caldwell,* 64 N.C. 372. After enactment of The Code, the rule was continued in effect. *Royster v. Wright, supra; Price v. Eccles,* 73 N.C. 162; *Smith v. Barringer,* 74 N.C. 665; *R. R. v. Morrison,* 82 N.C. 141; *Cox v. Cox,* 84 N.C. 138; *Sloan v. McMahon,* 85 N.C. 296; *Neal v. Becknell,* 85 N.C. 299; *Commissioners v. Raleigh,* 88 N.C. 120; *Clements v. Rogers,* 95 N.C. 248; *Jones v. Beaman,* 117 N.C. 259, 23

S.E. 248; *Jones v. Wooten,* 137 N.C. 421, 49 S.E. 915; *Haywood County v. Welch,* 209 N.C. 583, 183 S.E. 727; *Grimes v. Beaufort County,* 218 N.C. 164, 10 S.E. 2d 640; *Lithographic Co. v. Mills,* 222 N.C. 516, 23 S.E. 2d 913; McIntosh, N. C. P. & P. sec. 523, op. cit. Second Edition, sec. 1394.

As stated by *Ashe, J.,* in *Cox v. Cox, supra:* "When a case involves both an account and the trial of an issue by a jury, they cannot be investigated at the same time—the one must precede the other—and it would be needless to increase the expense and trouble by a reference, when the case might result adversely to the plaintiff upon the finding of the jury." In such case, if the plea in bar is decided adversely to the defendant, there remains for determination, by reference or otherwise, the separate phase of the controversy, to wit, the exact amount due on the account or upon an accounting. In later cases, the rule is expressed as follows: "If the plaintiffs are not entitled to recover at all, it is useless to ascertain *what amount* they might recover if they had an enforceable cause of action." (Italics added.) *Stacy, C. J.,* in *Grady v. Parker, supra; Preister v. Trust Co.,* 211 N.C. 51, 188 S.E. 622; *Bank v. Fidelity Co.,* 126 N.C. 320, 35 S.E. 588.

An examination of the decisions cited above and others in which the stated rule has been applied involved situations in which, if the plea in bar were decided adversely to defendant, there remained a controversy as to the amount. In *Alston v. Robertson,* 233 N.C. 309, 63 S.E. 2d 632, an action in ejectment, while no reference thereto is made in the reported case, the record therein discloses that plaintiff's action also was to recover the reasonable rental value of the land as damages on account of defendant's alleged wrongful possession. See: *Williams v. Robertson,* 235 N.C. 478, 70 S.E. 2d 692.

In an action on an account, or for an accounting, or other action where plaintiff's claim is a composite of various items, there are two separate and distinct controversies: first, the plea in bar, which if established would preclude plaintiff entirely; and second, the exact amount of plaintiff's recovery in the event the issue arising on defendant's plea in bar is decided in plaintiff's favor. The fundamental idea is to avoid two separate trials when one *may* suffice to terminate the litigation.

But here the intervenors' cause of action is entire and indivisible. The sole issue is whether they can establish the alleged trust. Manifestly, they must prevail entirely or not at all. To establish the trust and to defeat respondent's pleas in bar, they must rely on substantially the same evidence. To apply the rule, under the circumstances disclosed here, would forsake the reason therefor; for to do so would raise the possibility of two separate and distinct trials when it appears clearly that one *will* suffice to dispose of the entire controversy.

Hence, the cause being a proper one for a compulsory reference, we conclude that the order of compulsory reference, under the pleadings herein, was not erroneous because of respondent's pleas in bar.

Even so, the order of compulsory reference does not deprive the intervenors of their constitutional right to a jury trial on the issues of fact raised by the pleadings and by their exceptions to the referee's findings of fact. However, such trial is only upon the written *evidence* taken before the referee. The referee's report, consisting of his findings of fact and conclusions of law, are not competent as evidence before the jury. *Moore v. Whitley,* 234 N.C. 150, 66 S.E. 2d 785, and cases cited.

Respondent asserts that the intervenors' cause of action is barred by *the undisputed evidence.* But, as stated above, the evidence is not before us. By stipulation, except for a fragment thereof, it was not brought forward. Moreover, as to estoppel, the burden of proof is on the respondent. *Peek v. Trust Co.,* 242 N.C. 1, 86 S.E. 2d 745. As to laches, no conclusion of law in respondent's favor can be reached otherwise than on the particular facts disclosed either by the intervenors' *evidence* or established by the jury. *Teachey v. Gurley,* 214 N.C. 288, 199 S.E. 83. And, with reference to the pleaded statutes of limitation, if and when the trust is established, the limitation begins to run as of the date it is shown the trust was in some manner repudiated. *Teachey v. Gurley, supra; Sandlin v. Weaver,* 240 N.C. 703, 83 S.E. 2d 806; *Bowen v. Darden,* 241 N.C. 11, 84 S.E. 2d 289. Whether, upon the evidence taken before the referee, the respondent is entitled to peremptory instructions on the issues raised by all or any of its pleas in bar, is a matter to be passed on by the trial judge before whom the case comes for jury trial.

The foregoing disposition requires that the judgment of the court below be vacated. It is so ordered. And the cause is remanded for jury trial as indicated above.

Judgment vacated and cause remanded.

JOHNSON, J., not sitting.