FEDERAL RESERVE BANK OF RICHMOND, VIRGINIA, v. F. S. DUFFY AND H. BRYAN DUFFY, AND KATE BRYAN DUFFY AND H. BRYAN DUFFY, EXECUTORS OF THE ESTATE OF F. S. DUFFY, DECEASED.

(Filed 4 November, 1936.)

1. **Bills and Notes C e—Evidence held to disclose that reserve bank discounting note was holder thereof in due course.**

The evidence tended to show that a national bank holding a note given by defendants for a valid debt, discounted the note with a Federal Reserve Bank, that the note was secured by a mortgage on real estate, but that on its face it appeared to be an open 60-day negotiable note, and that the national bank did not disclose the facts to the reserve bank, and there was no evidence of fraud or collusion between the banks. Upon the failure of the national bank, the makers paid the reserve bank part of the amount due thereon, but refused to pay an amount equal to their deposit in the national bank, claiming that they were entitled to offset the deposit against the note upon their contention that the reserve bank was not a holder in due course. The reserve bank did not learn that the note was

secured by real estate until after the failure of the national bank, and did not attempt to subject the collateral to the payment of the note. *Held:* Since the national bank was acting in its own interest in discounting the note, its knowledge of its precarious condition and that the note was secured by real estate and was not therefor eligible for rediscount, was not imputed to the reserve bank, and the reserve bank is a holder of the note in due course and the right to offset the deposit in the national bank is not available against it.

**2. Banks and Banking D a—**

Where a note executed by the makers for a valid debt is rediscounted by the payee bank, the makers cannot complain that the note was not subject to rediscount under the Federal Reserve Act, only the Federal Government being in a position to complain that a reserve bank exceeded the powers conferred upon it by the Government.

**3. Banks and Banking C d—**

Where a national bank acts in its own interest in rediscounting a note with a Federal Reserve Bank, knowledge of the national bank of matters not appearing upon the face of the note which render it ineligible for rediscount, is not imputed to the reserve bank.

**4. Principal and Agent C c—**

The rule that knowledge of the agent is imputed to the principal does not prevail when the agent is acting in his own interest and has a motive for concealing the knowledge from the principal.

APPEAL by defendants from *Spears, J.,* at January-February Term, 1936, of CRAVEN. No error.

Suit on a negotiable promissory note, executed by F. S. Duffy and endorsed by H. Bryan Duffy, payable to the First National Bank of New Bern, and by said First National Bank of New Bern transferred by endorsement to plaintiff Federal Reserve Bank of Richmond.

The note sued on was in form as follows:

"New Bern, N. C.,
"Sept. 12, 1929.

"Sixty days after date I promise to pay to the order of The First National Bank of New Bern, New Bern, N. C., Thirty-one Hundred and Fifty Dollars ($3,150.00). Negotiable and payable at the First National Bank, New Bern, N. C., with interest after maturity; and we, the makers and endorsers, hereby agree to continue and remain bound for the payment of this note and all interest thereon, notwithstanding any failure and omission to protest this note for nonpayment, or to give notice of nonpayment or dishonor or protest or to make presentment or demand for payment, expressly waiving any protest and all notice of nonpayment or dishonor or protest in any form, or any presentment or demand for payment, or any notice whatsoever. Due Nov. 11, 1929. F. S. Duffy (SEAL)."

Back of said note: "Protest, demand and notice of nonpayment waived. (Signed) H. Bryan Duffy."

"Pay to the order of Federal Reserve Bank of Richmond, Va., September · 14, 1929. Demand, notice and protest waived. The First National Bank of New Bern, New Bern, N. C.

(Signed) Hugh P. Beal, Vice-President."

It was not controverted that the note evidenced a valid debt of the defendants, which had been outstanding for a number of years, and which had been originally secured by deed of trust on real estate, still in force, though the note in suit made no reference to any security. It further appeared that the First National Bank of New Bern was indebted to plaintiff in the sum of $20,000, and as security therefor had assigned and transferred certain collaterals which were from time to time renewed and added to; that the note sued on was offered by the First National Bank of New Bern to the Federal Reserve Bank for discount on 14 September, 1929, and credit therefor extended to the New Bern bank as of that date.

The First National Bank of New Bern closed its doors on 26 October, 1929, without having paid its indebtedness to the plaintiff, and the note in suit was sent by plaintiff to New Bern for collection, and the defendants made payments and received credits thereon from time to time until the amount was reduced to $935.57, the exact amount the defendants had on deposit in the First National Bank of New Bern at the time it closed, and the defendants refused to pay anything more on the note, claiming the deposit as a set-off for the balance of said note.

Defendants, in their answer, admitted the execution of the note, but alleged that there was collusion and fraud in the purported transfer and assignment of the note; that the plaintiff knew the First National Bank of New Bern was in distressed condition; that the character of the note was misrepresented to plaintiff by the New Bern bank, of which plaintiff was chargeable with notice; that the note was ineligible for discount by plaintiff under the provisions of the Federal Reserve Act, because secured by real estate and not for an agricultural, industrial, or commercial purpose, and that plaintiff's action in taking and rediscounting said note was in bad faith, and that therefore the plaintiff is not holder in due course of said note, but took same subject to the defendants' right of equitable set-off to the amount of their deposit in the said New Bern bank.

The jury for their verdict found, in response to the issues submitted to them, that the plaintiff was the holder in due course of the note sued on and that defendants were indebted to plaintiff in the amount claimed.

From judgment on the verdict, defendants appealed.

*M. G. Wallace and W. H. Lee for plaintiff, appellee.*
*Abernethy & Abernethy for defendants, appellants.*

DEVIN, J.  Defendants earnestly contend that under the circumstances of this case the action of the Federal Reserve Bank in taking and discounting the note in suit was in bad faith; that the paper itself was one ineligible for discount under the provisions of the Federal Reserve Act and the rules and regulations of the Federal Reserve Bank, and that plaintiff is not entitled to the position of holder in due course so as to deprive these defendants of the right of set-off to the amount of their deposit in the First National Bank of New Bern.

Defendants' views were fully set out in prayers for instructions tendered in apt time to the presiding judge, and they except to his refusal to give them.

The evidence, as it appears in the record before us, fails to sustain defendants' contentions.

There was no evidence of fraud invalidating the note, nor of collusion between the Federal Reserve Bank and the First National Bank of New Bern, nor of wrongful intent to deprive defendants of any legal rights.  The note on its face purported to be an ordinary 60-day negotiable note, eligible for discount.

The fact that the vice-president of the First National Bank of New Bern had not stated all the facts with reference to the purpose of the loan, or that there was real estate security for the original debt, was not known to plaintiff until after the failure of the New Bern bank.  The plaintiff is not now seeking to avail itself of the benefit of any security to this action.  There was no evidence of fraud in the transaction.  The defendants admit the note was given for a valid debt justly due the New Bern bank.  They do not deny that a new note or a renewal note for a preëxisting debt was given by them to the New Bern bank, and they do not controvert the fact that this note was by the said bank, before maturity and for value, endorsed to and discounted by the Federal Reserve Bank.  But they complain that in the effort to bolster a failing bank, its vice-president was guilty of bad faith in procuring this renewal note from the defendants and misrepresented its character to the Federal Reserve Bank so as to procure its discount; that the Federal Reserve Bank took with notice of these facts, and that its action in discounting the note under the circumstances amounted to bad faith on its part, and that as a result defendants have been wrongfully deprived of their right of set-off against the New Bern bank.

Even if the plaintiff had accepted for discount a paper declared ineligible by the act or by its rules, the defendants, who owe the debt, could not complain.

As was said by Circuit Judge Parker in a well-considered opinion in *Lucas v. Federal Reserve Bank,* 59 Fed. (2nd), 617, (involving transactions with the same bank): "There can be no doubt as to the right and power of the Federal Reserve Banks to take, as collateral security to the indebtedness of member banks, paper which is not eligible for discount. . . . It is given power by the act (12 U. S. C. A., sec. 341, Seventh) to exercise not only the powers expressly granted therein, but also such incidental powers as shall be necessary to carry on the business of banking within the limitations prescribed." The section of the Federal Reserve Act granting incidental powers to Federal Reserve Banks, is practically the same as the section granting incidental powers to national banking associations (12 U. S. C. A., sec. 24, Seventh). *First National Bank v. National Exchange Bank,* 92 U. S., 122. These powers are such as are necessary to meet all the legitimate demands of the authorized business and to enable a bank to conduct its affairs within the general scope of its charter, safely and prudently.

We quote further from *Lucas v. Federal Reserve Bank, supra:* "It is well settled that, under those incidental powers, a national banking association may take as security for a loan, collateral of a character in which it is precluded from investing funds." It was said in *Thompson v. Saint Nicholas National Bank,* 146 U. S., 240, with reference to national banks: "It would defeat the very policy of the act intended to promote the security and strength of the national banking system if its provisions should be so construed as to inflict a loss upon the banks and a consequent impairment of financial responsibility."

It is equally clear that whatever the power of the Federal Reserve Bank with respect to taking as collateral paper not eligible for discount, no one can complain of such action except the government, the sovereign which created and limited its powers. *Kerfoot v. Farmers' & Merchants' Bank,* 218 U. S., 281. In the last cited case, *Mr. Justice Hughes,* speaking for the Court, uses this language: "Although the statute by clear implication forbids a national bank from making a loan upon real estate, the security is not void and it cannot be successfully assailed by the debtor or by subsequent mortgagees, because the bank was without authority to take it; and the disregard of the provisions of the Act of Congress upon that subject only lays the bank open to proceedings by the government for exercising powers not conferred by law." *Union National Bank v. Matthews,* 98 U. S., 621; *Thompson v. Saint Nicholas National Bank,* 146 U. S., 240; *Bank v. Gadsden,* 191 U. S., 621; 12 U. S. C. A., sec. 24 (IX); *Oldham v. Bank,* 85 N. C., 241.

Defendants contend further that the relationship between the Federal Reserve Bank of Richmond, Virginia, and member banks was such as to constitute the latter the agent of the former, and thus impute notice to the principal of all facts known to the member bank.

While the evidence here is not such as to establish the relationship of principal and agent between plaintiff and the First National Bank of New Bern, there is a well-defined exception to the general rule that knowledge of the agent is imputed to the principal. Where the conduct of the agent is such as to raise a clear presumption that he would not communicate to the principal the facts in controversy, or where the agent, acting nominally as such, is in reality acting in his own business or for his own personal interest and adversely to the principal, or has a motive in concealing the facts from the principal, this rule does not apply. 2 A. J., 298; *Bank v. Burgwyn,* 110 N. C., 267. Where the agent is dealing in his own behalf or has personal interest to serve, the knowledge of agent is not imputable to the principal. *Bank v. Wells,* 187 N. C., 515; *Grady v. Bank,* 184 N. C., 158; *Corp. Com. v. Bank,* 164 N. C., 357; *Brite v. Penny,* 157 N. C., 110.

Here the First National Bank of New Bern, seeking to secure additional funds to continue a failing business, negotiates a valid paper which, on its face, is entirely proper and eligible for discount by the plaintiff, but fails to disclose facts which might have prevented its discount, and thereby obtains advances from the plaintiff for its own purposes. The New Bern bank was acting in its own interest, adversely to the plaintiff, in selling to the plaintiff the New Bern bank's property, and hence knowledge of bad faith, if any, on its part cannot in law be imputed to the Federal Reserve Bank.

We appreciate the hardship resulting to the defendants from being deprived of the right to set off their deposit in the First National Bank of New Bern against their note given to that bank, but this right may not be invoked to the detriment of the transferee of this note, who by the law merchant was a holder in due course.

The defendants' exceptions on the record before us cannot be sustained, and in the trial, we find

No error.