SOLON LODGE No. 9 KNIGHTS OF PYTHIAS COMPANY, TWIN-CITY LODGE No. 5 KNIGHTS OF PYTHIAS COMPANY, AND MASEO KNIGHTS OF PYTHIAS LODGE No. 14 COMPANY v. IONIC LODGE FREE ANCIENT AND ACCEPTED MASONS No. 72 COMPANY.

(Filed 11 December, 1957)

1. Trusts § 28—

Where the *cestuis* make out a *prima facie* case establishing a trust, the trustee has the burden of establishing his defense that the trust

had been terminated by the distribution of the *corpus* for the benefit of the *cestuis,* and nonsuit on such affirmative defense is proper only when it is established as a matter of law by the *cestuis'* evidence.

**2. Trial § 24a—**

Nonsuit on an affirmative defense is proper only when plaintiff's own evidence establishes such defense.

**3. Trusts § 28: Associations § 4—Property of association can be diverted to other uses only by unanimous consent of its members.**

A benevolent association conveyed realty to a corporation formed for the purpose of holding the property for the benefit of the association. Defendant corporation contended that it terminated the trust under agreement by thereafter issuing its stock to the members of the association in good standing. *Held:* The association had no right to apply the property to any use other than the trust except by the unanimous consent of its members, and where the evidence discloses that a bare majority of the members of the association voted in favor of terminating the trust in such manner, the defense of termination is not established as a matter of law.

**4. Limitation of Actions § 16—**

Where the apposite statute of limitations is properly pleaded, the burden is ordinarily on the adverse party to show that his claim is not barred.

**5. Limitation of Actions § 18—**

Where the party against whom the apposite statute of limitations has been properly pleaded fails to show that his action is not barred, nonsuit is proper, but where the facts are in doubt or in dispute and there is any evidence sufficient to justify the inference that the cause of action is not barred, the issue is for the jury.

**6. Limitation of Actions § 9—**

Even the unequivocal repudiation of the trust by the trustee does not start the running of the statute of limitations in the trustee's favor until the *cestuis* have notice or knowledge of such repudiation in such manner that they are called upon to assert their rights.

**7. Same—**

Ordinarily, the statute of limitations does not run against an action by the *cestuis* to enforce a trust so long as the *cestuis* remain in possession of the trust property.

**8. Same—**

Ordinarily, where the *cestui* in possession of the trust property voluntarily pays rent to the trustee and thus establishes the relationship of landlord and tenant between them, such relationship suffices to set the statute of limitations to running against the *cestui.*

**9. Same: Associations § 4—Knowledge of payment of rent by officers of association, acting against interest of association, is not imputed to members.**

Members of a benevolent association conveyed realty to a corporation formed for the purpose of holding the property for the benefit of the association. Defendant corporation contended that it terminated the

trust under agreement by issuing its stock to the members of the association in good standing, and that thereafter the association paid rent to the corporation. The evidence disclosed that the association continued to use the premises, and there was evidence that when the corporation acquired the property it was understood that no rent would be charged but that later rent was charged by the corporation and paid by officers of the association who were then in control of its affairs, which officers were also agents of the corporation, and that not all members of the association had knowledge that the corporation was exacting and the officers of the association were paying rent. *Held:* The knowledge of the officers of the association acting in their own behalf and against the interest of the association will not be imputed to its members, and the mere payment of the rent under the circumstances of this case is not sufficient to start the running of the statute of limitations against the right of the *cestuis* to enforce the trust.

**10. Principal and Agent § 8—**

The rule that knowledge of the agent is imputed to the principal does not apply when the agent, nominally acting as such, is in reality acting in furtherance of his own personal business and adversely to the principal, or has a motive in concealing the facts from the principal.

**11. Limitation of Actions § 9—**

The three-year statute of limitations is applicable in an action to establish an express trust. G.S. 1-52.

**12. Appeal and Error § 45—**

Where the jury answers the issue as to the bar of the three-year statute of limitations in plaintiff's favor, the submission of the further issue of the ten-year statute cannot be harmful.

APPEAL by respondent from *Crissman, J.,* and a jury, at 22 April, 1957, Term of FORSYTH.

This case was here at the Fall Term, 1956. The decision, sending it back for retrial, is reported in 245 N.C. 281, 95 S.E. 2d 921. The background facts are there set out in pertinent detail. Only such of them will be restated here as seem necessary to present the questions for decision on the present appeal.

The case as originally instituted was a special proceeding for the partition sale of real estate. The property, originally a vacant lot, was purchased in 1901 by four fraternal benefit lodges for the purpose of erecting a building to provide meeting quarters for each of the lodges. A three-story building was erected and the four lodges used the second and third floors for their meetings. The first floor of the building, and at times some of the lodge rooms, were rented out.

It is alleged in the petition and admitted in the answer that the respondent owned a one-fourth undivided interest in the property. The controversy now at issue arose when a group of intervenors came in by petition in the cause and asserted title to the one-fourth interest claimed by the respondent. The inter-

venors are the officers and members of Ionic Lodge No. 72, Free, Ancient and Accepted Masons, an unincorporated fraternal association organized and existing under charter of the State Grand Lodge of the Masonic Order, hereinafter referred to at times as the Lodge. The respondent, Ionic Lodge Free Ancient and Accepted, Masons No. 72 Company, hereinafter referred to at times as the Corporation, by the terms of its original charter issued by the Secretary of State was a nonstock corporation. It was set up in 1901 at the instance of the intervenor Lodge for the purpose of taking and holding title to its one-fourth interest in the lodge property. This one-fourth interest when purchased by the Lodge was conveyed at its direction to the Corporation. It is alleged that the nonstock corporation was authorized "to hold and own real and personal property to the amount of Twelve Thousand and no/100 Dollars ($12,000) for charitable purposes only,"

The intervenors alleged that the Corporation took title and held it in trust for the Lodge and its members, present and future. The purpose of their intervention was to establish the trust. The respondent Corporation by answer denied the intervenors' claim of title, and by way of further defense alleged that pursuant to appropriate resolutions adopted by the Lodge in 1929 the charter of the Corporation was amended, in a manner that converted it from a nonstock corporation to an ordinary corporation with authorized capital stock of $5,325, divided into 106½ shares of the par value of $50 per share; that the stock was issued to the then members of the unincorporated Lodge who were in good standing; and that this conversion of the corporation into a stock company, together with the allocation of its capital stock to the members of the Lodge, effectively terminated any trust relation that may have previously existed between the Corporation and the unincorporated Lodge; and that thereafter the Corporation owned the one-fourth interest in the property, freed of any trust. The other defenses set up by the respondent are: (1) the statutes of limitations, (2) laches, and (3) estoppel.

The land was sold by a commissioner, and each of the petitioners has received its one-fourth of the proceeds. They have no further interest in the controversy. The remaining one-fourth of $2,902.06, claimed by the intervenors and by the respondent, is now being held by the clerk. Its disposition is the subject of the controversy.

The decision on former appeal discloses that the case was first heard by a referee, and then, on exceptions, by the presiding judge, and from the judgment entered, both sides appealed to this Court. The judgment was vacated and the cause was re-

manded, with direction that it be tried by a jury. *Solon Lodge v. Ionic Lodge, supra* (245 N.C. 281).

On retrial, the case was submitted to the jury on the evidence adduced before the referee. The following issues were submitted and answered as indicated:

"1. In 1901 was legal title to said undivided one-fourth interest in the real estate conveyed to Ionic Free, Ancient and Accepted Masons No. 72, Company, in trust for the use and benefit of Ionic Lodge No. 72, Free Ancient and Accepted Masons, a fraternal Lodge, and the then present and future members of such fraternal lodge so long as it should continue to operate? Answer: YES.

"2. If so, was the trust subsequently legally terminated? Answer: No.

"3. Are the intervenors estopped from recovering the proceeds of said sale? Answer: No.

"4. Are the intervenors barred by the three-year statute of limitations from recovering said one-fourth proceeds of sale? Answer: No.

"5. Are the intervenors barred by the ten-year statute of limitations from recovering said one-fourth proceeds of sale? Answer: No.

"6. Are the intervenors barred by laches from recovering said one-fourth proceeds of sale? Answer: No."

Judgment was entered on the verdict, adjudging that the unincorporated Lodge is the equitable owner of and entitled the $2,902.06 proceeds of sale in the hands of the clerk. The judgment directs that this fund be turned over to the Lodge for use towards providing a lodge hall for lodge purposes. From the judgment so entered, the respondent appeals.

*Ingle, Rucker & Ingle for respondent appellant.*
*William S. Mitchell for intervenors appellees.*

JOHNSON, J. The chief assignment of error urged by the respondent Corporation is that the court below erred in denying its motion for judgment as of nonsuit at the close of all the evidence. The respondent contends that the motion for nonsuit should have been allowed on either or both of these grounds: (1) that the transactions in 1929, by which the capital stock in the Corporation was allocated to its members, terminated the trust relation which previously existed between the Corporation and the unincorporated Lodge, by merging in the Corporation both the equitable and the legal title to the property, and (2) that in any event, the intervenors failed to offer evidence suffi-

cient to repel the bars of the statutes of limitations set up by the respondent. We discuss separately the grounds urged by the respondent for nonsuit.

1. *The question whether the intervenors should have been nonsuited on the ground that the trust was terminated by the issuance and allocation of the stock in 1929.* In determining this question, these things must be kept in mind: (1) that the intervenors, assuming the role of plaintiffs, alleged, and offered evidence sufficient to show, that the respondent Corporation held title to the property as trustee for the unincorporated Lodge; and (2) that the Corporation, answering, set up as an affirmative defense the plea that the trust was terminated in 1929 by the allocation of the corporation stock to the members of the Lodge. Thus the burden of proof was on the respondent to establish its affirmative defense. In a situation of this kind, where the relief demanded by the plaintiff stands *prima facie* proved, non-suit is available to the defendant only where the plaintiff's evidence establishes the affirmative defense as a matter of law. *Jarman v. Offutt,* 239 N.C. 468, 80 S.E. 2d 248; *Butler v. Ins. Co.,* 213 N.C. 384, 196 S.E. 317; *Hedgecock v. Ins. Co.,* 212 N.C. 638, 194 S.E. 86.

In order to establish the respondent's affirmative defense that the trust was terminated by the allocation of stock to the members of the Lodge, it was necessary to show that such allocation was made by the unanimous action of all the members of the Lodge. 7 C.J.S., Associations, Section 14(b) (2). The rule is that where property is vested in a trustee for the use and benefit of an unincorporated association, like the instant fraternal benefit Lodge, the association, acting in conformity with the will of the majority of its members, ordinarily has a right to devote the property to the objects of the association, but it has no right to apply it to other uses, *except by the unanimous consent of the members. Lodge v. Benevolent Association,* 231 N.C. 522, 58 S.E. 2d 109; *Lodge v. Lodge, supra* (245 N.C. 281).

The evidence adduced below discloses that the action of the members of the Lodge in attempting to divide up the property by issuing the stock was never unanimous. It is noted that Thomas H. Martin, who was then Worshipful Master of the Lodge, testified in part: "At this time the Lodge wasn't making any progress, almost at a standstill; sometimes a few members would come, sometimes they wouldn't. . . . Some of the older men began to clamor for stocks. I didn't think too much of the idea. . . . But they kept forcing the issue and finally I appointed a committee. . . . They brought back recommendations for it. . . . I decided to put it to a vote. . . . The original motion was carried 13 to 12. . . . In fact, the feeling was so strong on both sides I

didn't want to even let it come up. I tried to keep it out. Through this period of 1928 and 1929 it was about equally divided. There wasn't too many for it and too many against it; about equal. . . . I don't think our membership was over 50 or 60." When the stock was issued, there were about 15 certificates that were never taken by the members to whom they were issued. These certificates remained in the stock book and were exhibited at the trial.

In view of the foregoing testimony, it is manifest that the intervenors' evidence does not establish as a matter of law that the trust was terminated in 1929 by allocation of stock in the Corporation to the members of the Lodge. Accordingly, the respondent was not entitled to nonsuit on that ground.

2. *The question of the statute of limitations.* Here the respondent makes a two-fold contention. First, the respondent points again to the events of 1929, when the corporation charter was amended and the capital stock was allocated to the members of the Lodge, and makes the contention that if the events surrounding the allocation of stock were not sufficient in law to work an immediate termination of the trust, because of lack of unanimous consent of all the members, nevertheless, it asserts that such action shows a disavowal or repudiation of the trust which set the statute of limitations to running against the unincorporated Lodge, and that the evidence here shows that the bar of the statute, whether it be the statute of three or ten years, became absolute as a matter of law long before the intervenors set up their instant claim in this action in November, 1952, and that therefore the case should have been nonsuited at the close of the evidence. Next, the respondent points to the phase of the evidence tending to show that some years after the stock was allocated among the members in 1929, the officers of the Corporation (who were also officers of the Lodge) started collecting rent from the Lodge and paying dividends on the stock. This evidence the respondent insists was sufficient to set the statute of limitations in motion and establish as a matter of law the bar of the statute against the Lodge.

In passing on these contentions of the respondent it is necessary that we keep in mind and apply certain basic principles relating to the burden of proof and nonsuit in cases where the statute of limitations is pleaded:

1. While the plea of the statute of limitations is a positive defense and must be pleaded, even so, when it has been properly pleaded, the burden of proof (except in certain cases not applicable here) is then upon the party against whom the statute is pleaded to show that his claim is not barred, and is not upon the party pleading the statute to show that it is barred. *Lee v.*

*Chamblee,* 223 N.C. 146, 25 S.E. 2d 433; *Rankin v. Oates,* 183 N.C. 517, 112 S.E. 32.

2. "Ordinarily, the bar of the statute of limitations is a mixed question of law and fact." *Currin v. Currin,* 219 N.C. 815, 817, 15 S.E. 2d 279, 280. Nevertheless, where the party against whom the statute has been pleaded fails to sustain the burden on him to show that limitations had not run against his cause of action, it is proper for the court to grant a motion for nonsuit. *Hooper v. Lumber Co.,* 215 N.C. 308, 1 S.E. 2d 818; *Hargett v. Lee,* 206 N.C. 536, 174 S.E. 498.

3. However, where the facts are in doubt or in dispute and there is any evidence sufficient to justify the inference that the cause of action is not barred, the trial court may not withdraw the case from the jury. *Garrett v. Stadiem,* 220 N.C. 654, 18 S.E. 2d 178; *Majette v. Hood, Com'r of Banks,* 208 N.C. 824, 179 S.E. 23; *Fort Worth R. R. v. Hegwood,* 198 N.C. 309, 151 S.E. 641.

In deciding the question of nonsuit based on the plea of the statute of limitations here raised, it would serve no useful purpose for us to restate the evidence favorable to the respondent. It may be conceded there was ample evidence to support a jury-finding in favor of the respondent on its plea of the statute of limitations of three years, G.S. 1-52. Decision here requires only that we determine whether the intervenors' evidence was sufficient to show *prima facie* that their cause of action was not barred. Hence, the scope of decision is narrowed to a treatment of the evidence favorable to the intervenors in the light of certain principles of law which may be stated in summary as follows:

1. The general rule is that a trustee's repudiation of a trust and his assertion of an adverse claim of ownership is not sufficient to start the statute of limitations to running, unless and until such repudiation and claim are made known to the beneficiary of the trust. The trustee's "repudiation and adverse claim must be clear, open, and unequivocal, and must be so clearly made known to the *cestui que trust* as to require him to assert his rights." 54 C.J.S., Limitations of Actions, Sec. 182(b)(3), p. 171. In *Teachey v. Gurley,* 214 N.C. 288, 293, 199 S.E. 83, 87, the Court said: "As long as the relation of trustee and *cestui que trust* is admitted to exist, and there is no assertion of adverse claim or ownership by the trustee, no refusal on demand to comply with the terms of the trust, and no repudiation or disavowal of the trust, no cause of action rests in the *cestui que trust.* The cause of action arises when and only when there has been some assertion of adverse claim or ownership, or a refusal to comply upon demand, or a disavowal or repudiation of the trust. (cita-

tion of authorities) . . . the statute begins to run when the trust is closed or when the trustee disavows the trust with the knowledge of the *cestui que trust,* or holds adversely to the claim of those he represents. If a trustee repudiates a trust by clear or unequivocal acts or words and claims thenceforth to hold the estate as his own, not subject to any trust, and such repudiation and claim are brought to the notice or knowledge of the *cestui que trust* in such manner that he is called upon to assert his rights the statute will begin to run from the time that such knowledge is brought home to the *cestui que trust* and he will be completely barred at the end of the statutory period."

2. However, in determining when the owner of real estate must assert his rights against an adverse claim, the rule is that an owner in possession is not required to take notice of a hostile claim. Accordingly, the hostile act or claim of a person not in possession ordinarily does not start the statute of limitations to running against an owner in possession and occupancy. 54 C.J.S., Limitations of Actions, Sec. 118. The foregoing rule applies to an equitable owner in possession of land, and so long as he retains possession, nothing else appearing, the statute of limitations does not run against him. *Bowen v. Darden,* 241 N.C. 11, and cases cited at bottom of page 17, 84 S.E. 2d 289, 294.

3. Nevertheless, where it appears that the relation of landlord and tenant has been established between trustee and *cestui que trust,* evidenced by voluntary payment of rent by the *cestui que trust* to the trustee, such relation ordinarily suffices to set the statute of limitations to running against the *cestui que trust.* But where, as here, the object of the trust is to hold and preserve title for the benefit of an unincorporated association, whose personnel is constantly in flux and subject to future change, the mere establishment of the relation of landlord and tenant and the collection of rent by the trustee, without more, is not enough to start the statute to running. To set the statute in motion we think it necessary to show that all the members of the Lodge had knowledge, or in law were charged with knowledge, that the Corporation was exacting and the officers of the Lodge were paying rent. See *Lodge v. Benevolent Association, supra* (231 N.C. 522) ; *Lodge v. Lodge, supra* (245 N.C. 281).

4. The general rule is that the relation of principal and agent exists between the members of an unincorporated association and its officers, so that knowledge obtained by the officers concerning vital business dealings is ordinarily imputed to the members. However, there is a well recognized exception to the general rule that knowledge of the agent is imputed to the principal. The exception is stated this way in *Federal Reserve Bank v. Duffy,* 210 N.C. 598, 603, 188 S.E. 82, 84: "Where the conduct of

the agent is such as to raise a clear presumption that he would not communicate to the principal the facts in controversy, or where the agent, acting nominally as such, is in reality acting in his own business or for his own personal interest and adversely to the principal, or has a motive in concealing the facts from the principal, this rule does not apply. (citing authorities) Where the agent is dealing in his own behalf or has personal interest to serve, the knowledge of agent is not imputable to the principal."

Here the evidence favorable to the intervenors discloses: that the unincorporated Lodge remained in possession and continued to hold its meetings in the Lodge hall until it was sold—as one witness put it, "up to date"; that when those who advocated the allocation of stock gained control and issued the stock, by bare majority action, in 1929, it was their announced purpose that the Lodge should remain in possession of the property, rent free; that the stated purpose of this group was to prevent the property from passing to the State Grand Lodge and thereby save it for all the members in the event the local charter should be revoked or suspended; that in 1928 and 1929 the Lodge was finding it hard to keep current with obligations to the State Grand Lodge; that the State Masonic Code provided that in case of "suspension or demise" of a lodge, its property would "forthwith vest in the Grand Lodge"; that "In order to keep this from happening, the men felt like in issuing the stock they could hold theirs in fee simple"; that "It was a precaution against failure of our Lodge which would, under the Masonic Code, cause the title to go to the Grand Lodge"; that the building was under the management of twelve trustees, three elected from each of the four owner-lodges; that the trustees leased the stores on the first floor of the building and also some of the offices in other parts of the building, and collected the rents, paid for upkeep and repairs, and turned over the surplus to the owner-lodges; that the three trustees representing the intervenor Lodge were elected by the Lodge; that these trustees made financial reports from time to time to the Lodge in session and turned in to the Lodge treasurer its share of the surplus rentals from the building; that this plan of handling the surplus rents continued to be followed for a long time after the stock was allocated to the members; that the deed of trust on the Lodge property was not paid off until January, 1939; that after 1929 the membership increased considerably—from about 64 to approximately 100; that nevertheless, "the members of the fraternal Lodge who held certificates of stock were in control of the fraternal Lodge itself," with the elected officers of the Lodge serving also as officers of the Corporation; that, according to the testimony of the witness Martin, who was a member from prior to 1929 until he

left the city of Winston-Salem in 1940, at first all business was transacted in regular lodge meetings, but that later "Because of some other matters pertaining to bills owed, . . . we would call the Lodge off and then take care of those bills"; that, according to the further testimony of witness Martin, from the time he joined the Lodge in 1913 "up until pretty close to 1940" the Lodge paid no rent; that, according to the testimony of witness Potts, "We'd have our Lodge meeting, dismiss, and re-assemble for this other. We had it in the same place, and most of the same people were present."; that according to the testimony of the Rev. George W. Moir, who came into the Lodge in 1941 and served as Worshipful Master from 1944 until 1949: "When I came in the Lodge in 1941, the brethren who held certificates of stock in the stock company were in controlling power of the Lodge. I heard something about the stock when I went in in 1941, but I never could get any information concerning it until I became Master. When I became Master in 1944, we couldn't get any information concerning the certificates of stock and the Lodge was paying rent. We decided to go into the matter and see. So, we asked the Trustees for a report and I could not get one. . . . it took some time to find out the full facts concerning this real estate; it was approximately 1947 when me and my fellow officers found out what the various claims were concerning this real estate"; that after this investigation the fraternal Lodge continued to utilize the building and the real estate and at the meeting of July 27, 1947, "the Lodge voted to discontinue paying rent"; that after the Lodge stopped paying rent in 1947, a proceeding in ejectment was instituted at the instance of the trustees against the unincorporated Lodge, which resulted in a judgment in favor of the unincorporated Lodge.

The foregoing testimony and other evidence of like import relied on by the Lodge justifies these inferences: (1) that when the capital stock in the Corporation was allocated among the members of the Lodge in 1929, the allocation was made under circumstances not amounting to a clear, open, and unequivocal repudiation of the trust; (2) that when and after the stock was issued, a substantial number of the members of the Lodge were without notice that the members who accepted the stock intended to make and did make adverse claim to the property; (3) that later, after the officers began collecting rent from the Lodge for the benefit of the holders of stock in the Corporation, a substantial number of the members of the Lodge were without actual knowledge that rent was being so collected and paid; (4) that the officers of the Lodge, in withdrawing the rent money from the Lodge treasury and in distributing it among the holders of stock, were acting adversely to the interest of the Lodge and in

furtherance of their own personal interest, so that in law their knowledge of the rental arrangement was not imputed to their fellow members of the Lodge; and (5) that as soon as the rental arrangement was discovered by the aggregate group in 1947, prompt action was taken to terminate it.

With the evidence being susceptible of the foregoing inference, the court properly overruled the motion for nonsuit and submitted to the jury the issue on the statute of limitations of three years. The trust here was based on an agreement or transaction operating as an express trust. Hence the limitation applicable was the statute of three years. G.S. 1-52. *Teachey v. Gurley, supra* (214 N.C. 288). Manifestly, then, no harm came to the respondent from the submission of the further issue based on the statute of ten years, G.S. 1-56.

It necessarily follows from what we have said that the court correctly declined to direct a verdict in favor of the respondent on both issues of the statute of limitations.

The other exceptions brought forward have been examined. Prejudicial error has not been made to appear. The verdict and judgment will be upheld.

No error.