CLOVER MINK HILL v. FEDERAL LIFE AND CASUALTY COMPANY.

(Filed 10 June, 1960.)

**1. Insurance § 26—**

The right to avoid a policy of life insurance on the ground of false representations in the application is an affirmative defense upon which the insurer has the burden of proof.

**2. Trial § 24a—**

In passing upon a motion to nonsuit based upon an affirmative defense, the court must examine all the evidence and may not rely upon defendant's evidence only, and nonsuit on this ground may not be allowed if different inferences arise upon the entire evidence.

**3. Insurance §§ 17, 26— Evidence held not to establish misrepresentations as matter of law in policy application.**

The evidence tended to show that insured was discharged from a hospital some two years and three weeks prior to executing application for the policy, although he was not then completely cured and thereafter consulted his physician over a period of some two months with respect to the treatment prescribed. Insured's application stated that he had not been treated by a physician during the prior two years. *Held:* The evidence does not compel the conclusion that the statement in the application was false to applicant's knowledge, and therefore insurer was not entitled to nonsuit on the affirmative defense of false and fraudulent representations, since the expression "two years" as used in the application may be understood as an approximate statement.

**4. Insurance § 26:    Appeal and Error § 1—**

Where insurer denies liability solely on the ground of false and fraudulent representations in the application for the insurance, defends the action solely on this ground and tenders no other issues, insurer may not contend on appeal that its motion to nonsuit should have been allowed for plaintiff's failure to offer evidence that she was the person entitled to the proceeds, even though insurer had made a formal denial of plaintiff's allegations in this respect, since in such instance insurer has waived such defense and its objections and exceptions must be considered in the light of the theory of trial below.

**5. Insurance §§ 17, 26—**

A rider on a policy upon the life of applicant's son, which rider provides for waiver of further premiums on such policy in the event of applicant's death, constitutes insurance on applicant's life for the benefit of his son; therefore, in an action on a subsequent policy issued by another insurer upon the applicant's life, such insurer is entitled to show by competent evidence that the application for such rider on the prior policy had been rejected for the purpose of establishing the falsity of applicant's averment to the contrary in the application for the subsequent policy.

APPEAL by defendant from *Crissman, J.,* November 9, 1959 Regular Civil Term, of GUILFORD (High Point Division).

Defendant issued its policy of insurance on the life of Clarence E. Hill. The effective date was 4 October 1956. The policy obligated the defendant to pay, upon proof of death, "to Investors Syndicate of America, Inc., Minneapolis, Minnesota, as payee, for the account of that certain Investment Certificate No. 15-67092 of the designated maturity amount of $12,500.00, and maturity date of October 4, 1971, issued to the Insured, by said Investors Syndicate of America, Inc., the then holder of said Certificate being the beneficiary under this Policy." The policy required payment of an annual premium of $45. The amount payable under the policy decreased as the amount paid in premiums increased. At the expiration of the 15-year period it had no value.

The policy was approved for issue on 30 October 1956 and was mailed from the home office of the company to the insured on 2 November 1956.

The policy was issued pursuant to an application made by the insured. The application consists of two parts, Part 1 dated 4 October 1956 and Part 2 dated 24 October 1956. Both parts were signed by the insured. In Part 1 the insured was called upon to answer some eleven questions. The first seven call for the name, address, and other information not here material. Question 8 reads: "Have you ever applied for any life, accident and health, or hospital insurance which

has been rejected or rated up?" The insured answered this by checking the answer "No." Question 10 reads: "To the best of your knowledge and belief do you have any sickness or physical defect?" The insured answered this question "No." Question 11 reads: "a. Have you ever been confined to a Hospital or Sanitorium within the past 5 years? Yes. b. Have you consulted or been treated by a physician within the past 2 years? No. If either answer is "YES" give full details below.

*Name and Address of Physician     Reasons for Consulting Physician*
Dr. Carl Sheppard                  Physical Check up
Date Examined 10-3-56
In High Point Memorial Hosp., High Point, N. C.—1953 app."

Part 2 of the application, dated 24 October 1956, calls for answers to 15 questions. Material to the present controversy are questions 6, 7, 10, 11, 12, 13, 14, and 15 The questions so asked and answers given are as follows:

"6. Has any company ever RATED UP, REJECTED your application, CANCELLED or DECLINED to renew your policy? No.

"7. Have you ever used alcoholic liquor to excess: No."

"10. When did you last consult a physician and for what?
Date     10-3-56
Illness None—Routine Physical Examination
Physician   Karl Shepard, M.D.
Address High Point, N. C."

"11. Have you ever undergone or been advised to have a surgical operation?
Date     1939.
Type    Appendectomy.
Surgeon Dr. H. L. Brockman
Address High Point, N. C."

"12. Are you now, to the best of your knowledge and belief, in sound health? Yes."

"13. Have you ever had or been told you had any of the following:
(a) Epilepsy, chronic Headaches, Dizziness or disease of the brain or nerves? No.
(b) Any disease of Skin, Ears, or Eyes? No.
(c) Asthma, Tuberculosis, Pleurisy? No.
(d) Goitre, or any Thyroid Disturbance? No.
(e) Cancer, or any Tumor? No.
(f) Dropsy, Heart Trouble, Angina, or High or Low Blood Pressure? No.
(g) Gout, Arthritis, Rheumatism? No.

(h) Stomach or Duodenal Ulcer, *Appendicitis,* Hernia, Gall Bladder, Disease or Stone, Fistula? Yes.

(i) Kidney Disease, Colic, Gravel, Diabetes or Albumin or sugar in urine? No.

(j) Syphilis? No.

(k) Any Disease, Disorder, Accident or Injury other than mentioned above? (This question was not answered.)

"14. Have you had a Routine Physical Check-up? Yes. See #10 above.

"15. Within the last five years, have you consulted or been treated by any physician not named above, for any illness or ailment? Yes."

In line with and to the right of question 13 was the statement: "If 'Yes' give Complete Information, Including Date and Name and Street Address of Doctor." Below this was a blank space. The only information appearing in this space was "13 (h)—Appendectomy— High Point Memorial Hospital, High Point, N. C. Dr. H. L. Brockman; uneventful recovery."

Insured died at Duke Hospital, Durham, 1 August 1958. He was admitted to the hospital on 12 July 1958. He was suffering from internal hemmorrhages. His trouble was diagnosed as cirrhosis of the liver. The hemorrhaging was due to the diseased condition of the liver. In an effort to stop the bleeding, an operation was performed. The immediate cause of death was failure of the kidneys. This was produced by the cirrhosis of the liver.

Plaintiff, upon the death of her husband, the insured, filed claim with defendant for the amount owing pursuant to the policy provisions. On 9 December 1958 defendant declined to make payment, giving as its reasons for refusing to pay asserted misrepresentations contained in the application on which the policy was based. The material misrepresentations relied upon by the company were described in defendant's letter to plaintiff that "your late husband was under the care of Doctor W. J. Hunt from September 1954 to December 1954 for a condition diagnosed as cirrhosis of the liver. Furthermore, in 1955 another company did either write up or reject an application for insurance made by the late Mr. Hill." It then refers to the pertinent questions in the application and transmitted its check covering the premiums paid. Plaintiff, insisting that the policy was a binding obligation, refused to accept the check and brought suit. She alleged in section 4 of her complaint the death of her husband and that she was beneficiary under the policy. Defendant in its answer admitted that her husband died on the date alleged but denied the remaining allegations of section 4. As a further and additional de-

fense it pleaded in detail asserted false and material representations in the application inducing it to issue the policy of insurance.

As determinative of the controversy, the court submitted and the jury answered twelve issues as follows:

"1. Did Clarence Edward Hill represent in Part One of his written application to the defendant that to the best of his knowledge and belief he did not have any sickness or physical defect?

Answer: Yes.

"2. Was said representation false?

Answer: No.

"3. Did Clarence Edward Hill represent in Part One of his written application to the defendant that he had not consulted or been treated by a physician or practitioner within the past two years?

Answer: Yes.

"4. Was said representation false?

Answer: No.

"5. Did Clarence Edward Hill represent in Part Two of his written application to the defendant that he was, to the best of his knowledge and belief, in sound health?

Answer: Yes.

"6. Was said representation false?

Answer: No.

"7. Did Clarence Edward Hill represent in Part Two of his written application to the defendant that he had never had or been told that he had any disease, disorder, accident or injury except appendicitis?

Answer: No.

"8. Was said representation false?

Answer: No.

"9. Did Clarence Edward Hill represent in Part Two of his written application to the defendant that within the last five years, he had not consulted or been treated by any physician except Dr. H. L. Brockman for appendicitis and Dr. Karl Shepard for a routine physical examination?

Answer: No.

"10. Was said representation false?

Answer: No.

"11. Did Clarence Edward Hill represent in Part Two of his written application to the defendant that he was not then and had never been on a diet for his health?

Answer: Yes.

"12. Was said representation false?

Answer: No."

The parties having stipulated the amount payable under the policy if valid, the court based on the verdict and stipulation, entered judgment in favor of plaintiff; and defendant appealed.

*James W. Clontz for plaintiff, appellee.*
*Smith, Moore, Smith, Schell & Hunter for defendant, appellant.*

RODMAN, J. Defendant's first assignment of error is based on its motion to nonsuit. Two reasons are urged in support of the motion: first, the defense of material false representation rendering the policy void is established by the evidence, and second, plaintiff failed to prove her allegation that she was the holder of the certificate issued by Investors Syndicate and because of such failure has not shown that she is entitled to the proceeds of the policy, if valid.

The charges of false representation permitting defendant to avoid its contract are affirmative defenses as to which it had the burden of proof.

When a motion to nonsuit is based on asserted proof of an affirmative defense, the court cannot rely on defendant's evidence only. It must examine all of the evidence. If such an examination permits different inferences, some supporting and others negativing the defense, the motion must be overruled. *Solon Lodge v. Ionic Lodge,* 247 N.C. 310, 101 S.E. 2d 8; *Howard v. Bingham,* 231 N.C. 420, 57 S.E. 2d 401; *MacClure v. Accident Ins. Co.,* 229 N.C. 305, 49 S.E. 2d 742; *Barnes v. Trust Co.,* 229 N.C. 409, 50 S.E. 2d 2.

Defendant relies on the testimony of Dr. J. W. Hunt, a medical expert specializing in internal medicine, that insured had consulted him. The witness had no independent recollection of the date when he first saw the insured. According to his records it was 20 September 1954. He sent insured to the hospital on 21 September where he made certain tests and diagnosed insured's trouble as cirrhosis of the liver. The insured was under treatment by Dr. Hunt from 21 September to 2 October when he was discharged from the hospital. His condition had at that time improved, but he was not completely cured. The insured saw Dr. Hunt on 7 October, 25 October, and 8 December 1954 with respect to treatment which had been prescribed by Dr. Hunt. The insured was running fever when discharged from the hospital and his liver was still enlarged. The witness stated that he would not consider the insured's condition serious at the time he examined him, testifying: "Even with cirrhosis of the liver, he could have still lived, in my opinion, a natural span of lifetime with proper diet and treatment."

Plaintiff also testified that her husband consulted and was under treatment by Dr. Hunt in September or October 1954, and for a period of time thereafter went back to the hospital for checkups but not for treatment.

Dr. Karl Shepard, a specialist in internal medicine and medical examiner for defendant, testified that he examined him on 3 October 1956. He again examined him on 24 October 1956 in connection with the policy of insurance in question. Dr. Shepard testified: "If I were called upon to give an opinion as of October 24, 1956, I would say that he did not have cirrhosis of the liver. Cirrhosis is not necessarily fatal in every case, certainly not during its early stages. Folks live a long time with cirrhosis if they follow the rules."

Insured's answers to questions 11, Part 1, and 15, Part 2, of the application would, we think, justify a jury in finding that Mr. Hill recollected his treatment by Dr. Hunt as occurring more than two years prior to the application, and he did not by his answers intend to conceal his treatment by Dr. Hunt.

The official who examined the application and authorized the issuance of the policy testified that the answers given were sufficient to enable him to ascertain the reason for the hospitalization which applicant stated occurred about 1953.

The rule applicable to the facts of this case is, we think, correctly stated in *Owen v. Metropolitan Life Ins. Co.*, 67 A 25, 122 Am. St. Rep. 413. It is there said: "The expression 'two years,' as colloquially used, is always understood as an approximate statement. In this sense we think it must be interpreted in this application. An attendance by the physician beginning one year and nine months and ending one year and seven months before the application was not necessarily, and as a matter of law, a breach of the warranty."

It follows, we think, that defendant was not entitled to have its motion for nonsuit allowed for the reason first assigned by it.

Was defendant entitled to have the action dismissed because of plaintiff's failure to offer evidence showing that she was the holder of the certificate numbered and described in the policy? She alleged and defendant in effect denied that fact. Hence the burden of proof was on plaintiff, and the motion should have been allowed unless defendant has waived proof of that fact. Plaintiff insists that it has. To support her claim of waiver she points to these facts: When the claim was first made defendant refused to pay, not because she had not established that she was the holder of the certificate but because of asserted misrepresentations which rendered the policy invalid. The answer does not in express language deny that plaintiff is the holder.

The denial is indirect and defendant further says in its answer "that it has rightfully refused to make such payment because said policy of insurance is void and without effect for the reasons hereinafter set forth."

The manner in which defendant denied liability led not only plaintiff's counsel but the court to believe that the only disputed facts related to the asserted misrepresentations, and the case was tried on that theory. During the trial the company's official who handled the claim testified: "There is no question about the payment of these premiums. There is no question about the fact that we got proof of claim and notice of his death properly given. I have the figures as to the amount that would be due under this policy if it were valid. I had it figured out. $8,088.73 was the amount payable on the date of death, August 1, 1958." Certainly that evidence is subject to the inference that plaintiff had satisfied the defendant in her proof of claim that she was the holder of the certificate, and the only reason for failing to pay was the asserted invalidity.

Counsel for defendant, recognizing the responsibility imposed on him (G.S. 1-200), prepared and tendered issues which he thought necessary for a determination of the controversy. Defendant tendered no issue which questioned the fact that plaintiff was the holder of the certificate nor did it except to the failure of the court to submit such an issue. It is, we think, apparent from the record that the case was, with the acquiescence of defendant, tried on the assumption that the only disputed factual questions were those pleaded by defendant as affirmative defenses. The case having been tried on that theory, defendant cannot now urge, to defeat plaintiff, a defense which it waived. *Bowling v. Bowling, ante,* 527; *Waddell v. Carson,* 245 N.C. 669, 97 S.E. 2d 222; *Paul v. Neece,* 244 N.C. 565, 94 S.E. 2d 596; *Peek v. Trust Co.,* 242 N.C. 1, 86 S.E. 2d 256; *Crowell v. Air Lines,* 240 N.C. 20, 81 S.E. 2d 178; *Baker v. Varser,* 240 N.C. 260, 82 S.E. 2d 90; *Gorham v. Ins. Co.,* 214 N.C. 526, 200 S.E. 5; *Ammons v. Fisher,* 208 N.C. 712, 182 S.E. 479.

Since the cause must go back for a new trial for the reasons hereafter given, defendant can on such trial, if it so desires, require plaintiff to establish the fact that she is the holder of the certificate referred to in the policy.

Defendant's second assignment of error is directed to the defense asserted in its answer that the insured, by his answers to questions 8, Part 1, and 6, Part 2, of his application had made material misrepresentations with respect to the rejection of his application for

insurance by another company. That such a misrepresentation, if made, is material is not controverted.

Marvin Garner, District Manager of Woodmen of the World, witness for defendant, testified without objection that Clarence Edward Hill applied to him for policies of insurance on the lives of Mr. Hill's two minor sons. He made the applications on 9 March and 20 March 1955, "and at the same time applied for a payor benefit on himself which was in case anything should happen to him, it would be paid for. Under the insurance that he applied for, Mr. Hill was to pay the premiums. This payor benefit is generally considered as a rider that is put on the life of the applicant that should he die prior to the completion of the payment on the certificate, or in our particular case, before the child reaches the age of 21, that the payments would either be — in other words, the payments would be completed before the child reached 21, and the certificates of policy would be paid up . . . Mr. Hill applied for the payor benefit type thing on each of those policies. He was the applicant in relation to this application. He was the one that signed the application. I was the one who presented the application to him. If Mr. Hill died some short time after these type policies came into being with this payor benfit provision in effect, that would mean that the company would waive the premiums upon his death." The witness further testified that he was concerned with Mr. Hill's insurability. The application contained questions relating to Mr. Hill's health and consultations with doctors.

The witness was then asked: "And what did you do with the application after it was filled in and signed by Mr. Hill?" Plaintiff objected and the objection was sustained. Counsel for plaintiff in support of his objection said: "My objection is founded on the way this question is phrased in their application. Of course, they put this terminology together, and therefore the laws says if there is any ambiguity, it would be interpreted against the Federal Life and Casualty Company." Whereupon the court directed the jury to retire and then said: "Put in the record that the Court sustained the objection made by the plaintiff, and that the Court sustained it on the ground that according to this witness' testimony the application that he refers to is not for insurance upon himself but something in connection with insurance for his sons." Thereafter, in the absence of the jury, the witness was permitted to testify that the application Mr. Hill signed contained a question with respect to treatment by physicians, that he asked the question and Mr. Hill answered it. He secured the name of the physician who had treated Mr. Hill. He inquired if Mr. Hill had had any sickness, and he answered that he had an enlarged liver.

After the application .was completed and signed, the witness mailed it to the home office of Woodmen of the World. Woodmen of the World issued the policies of insurance on the lives of the sons but refused to issue the payor benefit provision by which it would waive payment of premiums in the event of Mr. Hill's death.

Dr. Hunt had previously testified that on 30 March 1955 in response to an inquiry directed to him by Woodmen of the World he informed it of the treatment given and Mr. Hill's condition as diagnosed by the witness.

Based on the testimony of Garner and Dr. Hunt, defendant tendered the following issues:

"1. Did Clarence Edward Hill represent in Part One of his written application to the defendant that he had never applied for any life, accident and health, or hospital insurance which had been rejected or rated up?

"2. Was said representation false?"

"7. Did Clarence Edward Hill represent in Part Two of his written application to the defendant that no company had ever rated up, rejected his application, canceled or declined to renew his policy?

"8. Was said representation false?"

The court declined to submit these issues.

No question is raised with respect to the competency of Garner to testify to the contents of the application which Mr. Hill made to Woodmen of the World. We are not called upon to decide whether under the best evidence rule the contents of that application could be shown by parol. Since plaintiff limited her objection and the court ruled on the evidence upon the theory that the application for waiver of premiums in the event of the death of Mr. Hill did not constitute an application for insurance within the meaning of questions 8 and 6, that became the theory of the trial, and we pass on the assignments excluding the evidence and refusing to submit the issues tendered on that theory.

The court, we think, failed to appreciate the full import of Garner's testimony. According to Garner, Mr. Hill made two applications for insurance for each son. One application provided for the payment of a fixed sum to an undisclosed beneficiary upon the death of the son. Presumably inquiries were made with respect to the health of the son and a physical examination of the son was required. A contract rejected on that application would not be material to insurance on the life of Mr. Hill, and the questions asked in the application made to defendant were not directed to the contract of insurance on the life of the son. But insurance on the life of the son was not the only,

or rather the full contract which Mr. Hill sought to make with Wood-
men of the World. He sought insurance on his life for the benefit of
his son. True, no payment would be made directly to the son, but he
would benefit by the waiver of payment of the premium which Mr.
Hill expected to pay if he lived. Such an application is an application
for life insurance and required an affirmative answer to questions 8
and 6 asked by defendant. *Fox v. Swartz*, 30 A.L.R. 2d 739; *Pruden-
tial Ins. Co. v. Green*, 141 A.L.R. 1401; *Ritter v. Mutual Life Ins. Co.*,
169 U.S. 139, 42 L. Ed. 693; *In re Hamilton's Estate*, 154 P. 2d 1008;
44 C.J.S. 484; 29 Am. Jur. 435.

The court was in error in excluding the evidence for the reasons
given by it and in declining to submit the issues tendered.

New trial.